PUMP & PANTRY, INC., AND BOSSELMAN, INC., APPELLEES, V. CITY OF GRAND ISLAND, APPELLANT, NEBRASKA LIQUOR CONTROL COMMISSION, APPELLEE, WYMODAK, INC., A CORPORATION, DOING BUSINESS AS 7-ELEVEN STORE #712, ET AL., INTERVENORS-APPELLEES.

444 N.W.2d 312

Filed August 11, 1989.   No. 87-1033.

Charles J. Cuypers, Assistant Grand Island City Attorney, for appellant.

Howard E. Tracy, of The Legal Professional Corporation of Howard E. Tracy, for appellees Pump & Pantry, Inc., and Bosselman, Inc.

Robert M. Spire, Attorney General, and Susan M. Ugai for appellee Nebraska Liquor Control Commission.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

Pump & Pantry, Inc. (Pump & Pantry), and Bosselman, Inc. (Bosselman), both licensed liquor retailers in Grand Island, Nebraska, brought a declaratory judgment action in the district court for Lancaster County against the Nebraska Liquor Control Commission (commission) and the City of Grand Island (city). In their action, Pump & Pantry and Bosselman sought a declaration that the provisions of the Nebraska Liquor Control Act authorized and required only a limited inquiry for renewal of a liquor license. Wymodak, Inc., Ted G. and Dorothy M. Schroeder, and Gas 'N Shop, Inc., intervened in the action and sought the same relief requested by Pump & Pantry and Bosselman. On April 3, 1987, the district court granted summary judgment to Pump & Pantry and Bosselman, declaring that a liquor licensee was entitled to renewal of a license when (1) the applicant demonstrated compliance with the requirements for issuance of a license as such license requirements existed when the applicant first received a license; (2) the premises sought to be licensed are the same as the premises covered by the initially issued license; and (3) the premises are suitable for "such purpose."

The city appeals and contends that the district court

incorrectly construed the statutes in question.

The facts are not in dispute. Pump & Pantry was granted an off-sale, beer only liquor license in 1971 and, after issuance of the initial license, has been issued a renewal license in every year before commencement of the declaratory judgment action in October 1986. Bosselman, Wymodak, and Schroeders were issued similar licenses, contrary to the city's recommendation against issuance of the licenses in 1986. Gas 'N Shop was granted a package liquor license in 1985, which was renewed in 1986. None of the licensees have been charged with violation of the Nebraska Liquor Control Act.

In October 1986, the city requested that the commission require a licensed retailer to submit a "long-form" application for renewal of an existing license. Anticipating enforcement of the city's ordinances prohibiting issuance of a license to "any business or establishment engaged principally in the sale of goods, wares, or merchandise other than alcoholic liquor" and requiring premises where alcohol is sold to be "separate and distinct from any other business activity," Pump & Pantry and Bosselman brought their declaratory judgment action on October 17, 1986. The licensees in the present case apparently feared that the city would recommend denial of their licenses, which recommendations, at that time, were purportedly binding on the commission.

In *Gas 'N Shop v. Nebraska Liquor Control Comm.,* 229 Neb. 530, 427 N.W.2d 784 (1988), an ordinance of the city of Lincoln, Nebraska, which was an ordinance substantially similar to the ordinance in the present case, was declared unconstitutional on equal protection grounds. On December 2, 1988, this court issued its opinion in *Bosselman, Inc. v. State,* 230 Neb. 471, 432 N.W.2d 226 (1988), wherein 1986 Neb. Laws, L.B. 911, which gave local governing bodies the authority to make binding recommendations to the commission, was declared unconstitutional in its entirety. In May 1989, the Legislature enacted 1989 Neb. Laws, L.B. 780 and L.B. 781, which gave local governing bodies power, dependent on specified criteria, to make binding recommendations to the commission regarding issuance of a liquor license.

"A suit for declaratory judgment is an action sui generis and

may involve questions of both law and equity." *Hemenway v. MFA Life Ins. Co.*, 211 Neb. 193, 194-95, 318 N.W.2d 70, 72 (1982). A declaratory judgment action to construe a statute presents a question of law. In an appeal from a declaratory judgment, the appellate court, regarding questions of law, has an obligation to reach its conclusion independent from the conclusion reached by the trial court. *County of York v. Johnson*, 230 Neb. 403, 432 N.W.2d 215 (1988).

At issue in this case is certain language in Neb. Rev. Stat. §§ 53-150 (Reissue 1988) and 53-135 (Reissue 1984).

Section 53-150 provides:

> Any licensee may *renew* his license at the expiration thereof in the manner set forth in section 53-135; *Provided*, he is then qualified to receive a license and the premises for which such renewal license is sought are the same premises under the license to be renewed and are suitable for such purpose; *and provided further*, that the *renewal privilege* herein provided for shall not be construed as a vested right which shall in any case prevent the commission from decreasing the number of licenses to be issued within its jurisdiction.

(Emphasis supplied.)

In reference to the licensees involved in this appeal, the commission had not taken any action "decreasing the number of licenses to be issued within its jurisdiction."

Section 53-135, at the time of the declaratory judgment involved in these proceedings, provided in part:

> A retail or bottle club license issued by the commission and outstanding may be *automatically renewed* by the commission without formal application if the commission has on file a bond as required by section 53-138.02, upon payment of the state registration fee, and license fee if payable to the commission. The registration fee for license renewals may be paid by a personal or business check. The payment thereof shall be an affirmative representation and certification by the licensee that all answers contained in an application, if submitted, would be the same in all material respects as the answers contained in the last previous application. The commission may at any time

require a licensee to submit an application and the commission shall at any time require a licensee to submit an application if requested in writing to do so by the local governing body.

(Emphasis supplied.)

The sole issue presented by this appeal concerns the requirements which a liquor licensee must satisfy before a license is renewed pursuant to §§ 53-135 and 53-150. Pump & Pantry and Bosselman claim that the statutes in question permit only a limited inquiry for renewal of a liquor license, that is, an inquiry whether the renewal applicant has satisfied the license requirements existing when a liquor license was initially issued to the licensee. The city, on the other hand, maintains that requirements for issuance of a liquor license might change after initial issuance of a license, and, as a result of the subsequent change in requirements for a license, a renewal applicant must meet the current statutory standards for issuance of a renewal license. The district court concluded that the limited inquiry suggested by the licensees in this case was the proper construction and application of §§ 53-135 and 53-150.

"One of the fundamental principles of statutory construction is to attempt to ascertain the legislative intent and to give effect to that intent. [Citation omitted.] To ascertain the intent of the Legislature, a court may examine the legislative history of the act in question." *Spence v. Terry*, 215 Neb. 810, 814-15, 340 N.W.2d 884, 886-87 (1983).

> To determine legislative intent we generally consider the subject matter of the whole act, as well as the particular topic of a statute containing the questioned language. [Citation omitted.] In judicial construction of a statute, the statutory language will be given its ordinary and popular meaning, and a statute is open to construction only if the statute is ambiguous.

*Anderson v. Peterson*, 221 Neb. 149, 154, 375 N.W.2d 901, 905 (1985). See, also, *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989).

"When considering a series or collections of statutes pertaining to a certain subject matter which are in pari materia, they may be conjunctively considered and construed to

determine the intent of the Legislature, so that different provisions of the act are consistent and sensible." *In re Application U-2*, 226 Neb. 594, 610-11, 413 N.W.2d 290, 301 (1987).

There are acceptable, ordinary, and popular meanings attributed to *renew* and *privilege* as those words are used in § 53-150 and *automatically* as used in § 53-135. *Automatic* means "having a self-acting or self-regulating mechanism that performs a required act at a predetermined point in operation." Webster's Third New International Dictionary, Unabridged 148 (1981). *Privilege* means "a right or immunity granted as a peculiar benefit, advantage, or favor." *Id.* at 1805. *Renew* means "to grant or obtain an extension of: continue in force for a fresh period." *Id.* at 1922. Thus, the phrase "renewal privilege," as those words are used in § 53-150, means a right or benefit granted in favor of a licensee seeking an extension or continuation of a previously issued license. Moreover, in *Bosselman, Inc. v. State*, 230 Neb. 471, 432 N.W.2d 226 (1988), we determined that a right-privilege dichotomy was no longer useful in reference to an issued liquor license and held that the holder of a liquor license has a constitutionally protected interest in obtaining renewal of an existing license.

Further, the official "Explanation" contained in the legislative history of 1959 Neb. Laws, L.B. 487, which established the renewal privilege existing today, contains the following:

> Although the license renewal feature of the bill constitutes the most extensive change from the existing Act, when we look through form to the substance it is readily perceived that the end result as to which licenses will be renewed will remain virtually unaffected. It is a fact that under the present law renewal applications which indicate no change in circumstances affecting the license are approved as a matter of course, after passing them through the ritualized procedures. As a practical matter, it is only where the application of the licensee discloses altered circumstances that the exercise of judgment is required.

The city claims that the legislatively established "renewal

privilege," expressed in § 53-150, merely allows an existing license holder to reapply for a new license, which will be granted if the renewal applicant demonstrates compliance with the licensure requirements governing a current first-time applicant. In reaching this conclusion, the city relies heavily on the language of § 53-150, which provides that a licensee may renew a liquor license provided "he is then qualified to receive a license." The city's interpretation of § 53-150 would nullify the "renewal privilege" established by § 53-150 and would place renewal applicants on the same footing with first-time applicants for a liquor license. We conclude that the result suggested by the city was not intended by the Legislature when it enacted § 53-150. Rather, we conclude that the legislative history and the language of §§ 53-135 and 53-150 disclose a legislative intent to codify a practice of approving an application for continuation of an existing liquor license in the absence of a change of circumstances indicated on the licensee's renewal application. Hence, §§ 53-135 and 53-150 establish a privilege or limited right of renewal pertaining to an existing liquor license. *Bosselman, Inc. v. State, supra.*

We therefore construe that part of § 53-150 which specifies that a renewal applicant must be "then qualified to receive a license" to mean that the licensee-applicant must meet the requirements of Neb. Rev. Stat. § 53-125 (Reissue 1988), which provides that "[n]o license of any kind shall be issued to" certain classes of applicants, such as convicted felons and certain convicted misdemeanants. An event occurring after the issuance of the initial license, such as the licensee's conviction for a felony, may disqualify the licensee from renewal of a license because the applicant would no longer be "then qualified to receive a license." However, as the result of the renewal privilege established by § 53-150, a licensee is entitled to renewal of a license, that is, continuation of an existing license, if at the time for renewal the licensee meets the requirements which existed when the license to be renewed was initially issued. Thus, if at the time of the initial licensure a licensee's prior felony conviction disqualified the licensee from receipt of a license, an intervening felony conviction would disqualify the licensee from renewal of an existing license.

Accordingly, we hold that a licensee may renew a liquor license provided (1) "he is then qualified to receive a license"; (2) "the premises for which such renewal license is sought are the same premises" designated in the initial license; and (3) the premises are suitable for the sale of alcoholic beverage in accordance with the initially issued license.

The provisions of § 53-135, requiring payment of the state registration fee and license fee, operate as "an affirmative representation and certification by the licensee that all answers contained in an application, if submitted, would be the same in all material respects as the answers contained in the last previous application." In essence, this "affirmative representation" merely reflects the requirements of § 53-150, but does not require that a renewal applicant satisfy additional requirements for issuance of a renewal license.

Our conclusion regarding the construction of the statutes in question concerning the license renewal privilege under the Nebraska Liquor Control Act is the same as that reached by the district court. Therefore, the judgment of the district court is affirmed.

AFFIRMED.