RANDY COLEMAN, APPELLANT, V. CHADRON STATE COLLEGE, APPELLEE.

466 N.W.2d 526

Filed March 8, 1991.    No. 89-110.

Scott Ortiz, of Atkins Ferguson Zimmerman Carney, P.C., for appellant.

Raymond E. Walden, of Kennedy, Holland, DeLacy & Svoboda, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Randy Coleman appeals from the summary judgment entered by the district court for Dawes County holding that Coleman's personal injury action against Chadron State College (Chadron) is barred by the State Tort Claims Act's statute of limitations. We reverse, and remand the cause for further proceedings.

In his two assignments of error, Coleman contends that the trial court erred in granting Chadron's motion for summary judgment (1) on the basis that the statute of limitations had run and (2) because there was a genuine issue of material fact as to whether Chadron should be estopped from asserting the statute of limitations.

Summary judgment is proper when the pleadings, depositions, admissions, stipulations, and affidavits in the record show that no genuine issue exists as to any material fact or as to the ultimate inferences that may be drawn from any material fact and that, as a matter of law, the moving party is entitled to judgment. [Citations omitted.] *Joseph Heiting & Sons v. Jacks Bean Co.*, 236 Neb. 765, 766, 463 N.W.2d 817, 820 (1990). In reviewing a summary judgment, the Supreme Court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

In his petition, Coleman alleged the following: On April 2, 1984, Coleman was a 19-year-old student at Chadron. While working on a project in the power and energy systems classroom area on that date, Coleman injured his hand. The accident occurred when Coleman, who was carrying a block engine head to a project area storeroom, fell over a dashboard which was lying across the walkway into the storage area. As Coleman fell forward, the engine head came down upon his left hand. The accident resulted in Coleman's suffering a "transection of the flexor digitorum profundus to the long, ring, and middle fingers, and of the flexor digitorum subliminus to the ring finger and a fracture of the proximal phalanx of the ring finger." Coleman underwent an operation in which multiple tenorrhaphies were performed. He further alleged that the injury was permanent, that he had lost physical function in his left hand, that he had incurred medical expenses and would continue to do so, that he had lost his ability to earn, and that he had and would continue to suffer physical and emotional pain and suffering.

On September 8, 1987, Coleman submitted his claim to the Risk Manager of the State Claims Board. Any claim against the

State of Nebraska for money only on account of personal injury caused by the negligent or wrongful act or omission of any state employee while acting within the scope of his or her office or employment must be filed with the Risk Manager of the State Claims Board. Neb. Rev. Stat. §§ 81-8,210 and 81-8,212 (Cum. Supp. 1990). Because the claim was not submitted on a proper form, Coleman resubmitted his claim on a proper form. Notice of receipt of the claim was sent to Coleman's attorney on October 15, 1987. Coleman was advised that a hearing would be scheduled.

Coleman, on March 11, 1988, received a letter from a claims examiner for Argonaut Insurance Company (Argonaut), Chadron's liability insurance carrier. The claims examiner stated that formal documents were being requested, including medical reports and bills and loss wage forms, and that as soon as the documentation was received, the claim would be evaluated and Coleman would be advised of the decision.

In April and May 1988, Coleman submitted the requested documentation to the claims examiner. On June 14, 1988, Argonaut wrote Coleman's attorney, stating, "[W]e are at this time formally denying your client's claim . . . on the premise that your client has failed to either notify the state of the pending claim against them [sic] and/or file a Complaint within the statutory time requirements." A decision concerning a claim by the state's insurance carrier is not a final disposition of the claim on the part of the State Claims Board. See *Davis v. Town of Clatonia*, 231 Neb. 814, 438 N.W.2d 479 (1989).

Coleman's counsel notified the claims board by a letter dated July 5, 1988, that Coleman's claim was being withdrawn from the claims board. In a letter of July 11, 1988, the claims board informed Coleman's attorney that Coleman's claim was withdrawn and that the file was closed.

Coleman filed this action in the district court for Dawes County on August 18, 1988. See Neb. Rev. Stat. § 81-8,214 (Cum. Supp. 1990) (suits may only be brought in the district court). In its answer, Chadron alleged as one of its affirmative defenses that Coleman's action was barred by the applicable statutes of limitations. On December 1, 1988, Chadron moved for summary judgment on the ground that Coleman's claim

was barred by the limitation of action provision contained in Neb. Rev. Stat. § 81-8,227(1) (Cum. Supp. 1990). The court granted Chadron's motion on January 23, 1989, finding that Coleman's lawsuit was not filed within the time required by the State Tort Claims Act and that Chadron was not estopped from asserting the bar of the statute of limitations. Coleman timely appealed that order to this court.

Resolution of this case turns on the interplay of two statutes. While the statutes at issue have been amended since Coleman filed his claim with the Risk Manager of the State Claims Board, the amendments have no effect on the determination of this case. That being true, the most recent codification of those statutes will be cited in this opinion.

> No suit shall be permitted under the State Tort Claims Act unless the State Claims Board has made final disposition of the claim, except that if the board does not make final disposition of a claim within six months after the claim is made in writing to the board, the claimant may, by notice in writing, withdraw the claim from consideration of the board and begin suit under such act.

Neb. Rev. Stat. § 81-8,213 (Cum. Supp. 1990).

The other statute, § 81-8,227, provides in relevant part:

> Every tort claim permitted under the State Tort Claims Act shall be forever barred unless within two years after such claim accrued the claim is made in writing to the State Claims Board in the manner provided by such act. The time to begin suit under such act shall be extended for a period of six months from the date of mailing of notice to the claimant by the board as to the final disposition of the claim or from the date of withdrawal of the claim from the board under section 81-8,213 if the time to begin suit would otherwise expire before the end of such period.

As a threshold matter, the date on which the statute of limitations began to run must be determined. As pertains to this case, Neb. Rev. Stat. § 25-213 (Reissue 1989) provides that

> if a person entitled to bring any action [under] the State Tort Claims Act . . . is, at the time the cause of action accrued, within the age of twenty years . . . every such person shall be entitled to bring such action within the

respective times limited by this chapter after such disability is removed.

For purposes of § 25-213, one is "within the age of twenty years" until he or she becomes 21 years old. *Lawson v. Ford Motor Co.*, 225 Neb. 725, 408 N.W.2d 256 (1987).

Coleman alleged in his petition, and Chadron admitted in its answer, that he was born on December 14, 1964. Coleman was, therefore, under the age of 21 years on April 2, 1984, the date of the accident. He alleged in his petition that the statute of limitations began to run on the date of his 21st birthday, which was December 14, 1985. Accordingly, December 14, 1985, is the date which triggered the running of the statute of limitations. See *Bulger v. McCourt*, 179 Neb. 316, 138 N.W.2d 18 (1965) (in reviewing the sustaining of a summary judgment motion, admissions of fact in a pleading are to be treated as established). Cf. *Miller v. Radtke*, 230 Neb. 561, 432 N.W.2d 542 (1988) (a party may at any time invoke the language of his opponent's pleadings on an issue being tried as rendering certain facts indisputable).

Since we have resolved when the statute of limitations began to run, the question then becomes, What is the period of time in which suit must be commenced? Section 81-8,227 provides that a claim must be filed with the State Claims Board within 2 years after the claim accrued. In several instances in § 81-8,227, reference is made to the "time to begin suit." However, nowhere in § 81-8,227, or for that matter in the entire State Tort Claims Act, is it explicitly provided when a lawsuit must be commenced. Coleman argues that there is no limitation on the time to begin suit under the State Tort Claims Act except that a suit cannot be filed until the State Claims Board has made a final disposition of the claim or the claim is withdrawn after reposing with the claims board for 6 months. Not only is this reading of the statute unwise in light of the policies served by statutes of limitations, it does not conform to the language of the statute. If the Legislature had intended that there be no time limit on the commencement of lawsuits, it would not have provided in § 81-8,227 that "[t]he time to begin suit under such act shall be extended for a period of six months . . . if the time to begin suit would otherwise expire before the end of such

period." As Chadron correctly asserts, "If there is no limit on filing suit, then it would make no sense to provide for extension of the time to begin suit." Brief for appellee at 8. Since the only limitation alluded to in § 81-8,227 is 2 years, it is logical to presume that the Legislature intended that the 2-year limitation also apply to the filing of lawsuits.

"When statutory language is ambiguous and must be construed, recourse should be had to the legislative history for the purpose of discovering the lawmakers' intent. [Citation omitted.]" *Holdrege Co-op Assn. v. Wilson*, 236 Neb. 541, 547, 463 N.W.2d 312, 316 (1990). In this case, the ambiguity is created by the Legislature's reference to the time to begin suit without stating what that time might be. See *Iske v. Papio Nat. Resources Dist.*, 218 Neb. 39, 352 N.W.2d 172 (1984) (a statute is open to construction when the language used requires interpretation or may reasonably be considered ambiguous). In the introducer's statement to the Committee on Judiciary, Senator Luedtke reported that "LB 154 [State Tort Claims Act] provides for a two-year statute of limitations on such tort claim *actions* against the state." (Emphasis supplied.) Statement of Purpose, L.B. 154, 80th Leg. (Feb. 3, 1969). During floor debate on the bill, Senator Luedtke, the principal introducer of the bill, explained:

> [T]here is a two year statute of limitations to bring this lawsuit . . . . The reason I bring this to your attention is, that for torts, by private citizens against private citizens, there is a four year statute of limitations and this will cut that in half . . . and there will only be two years in which you can bring these claims against the State or file suit against the State.

Floor Debate, L.B. 154, 80th Leg. 842 (Mar. 26, 1969).

In view of the statutory language and the clear legislative history, we conclude that the Legislature intended that the period of limitation for filing an action in court pursuant to the State Tort Claims Act should be 2 years. "Legislative intent is the cardinal rule in statutory construction." *Iske, supra* at 41, 352 N.W.2d at 174.

We now reach the crux of this appeal. Under what circumstances, if any, is the time to begin suit under the State

Tort Claims Act extended?

Section 81-8,227 provides that under the State Tort Claims Act, the 2-year period of limitation to begin suit is extended for a period of 6 months "from the date of mailing of notice to the claimant by the board as to the final disposition of the claim or from the date of withdrawal of the claim from the board under section 81-8,213" if the 2-year period would otherwise expire before the end of the 6-month period. Because the State Claims Board never made final disposition of Coleman's claim, arguably only the withdrawal of claim exception is applicable to this case.

If, for example, one filed his or her claim in the 17th month after the claim accrued and withdrew the claim in the 23rd month after it accrued, § 81-8,227 provides that he or she is given an additional 6 months in which to file the suit, as the 2-year period of limitation would otherwise expire during the ensuing 6 months. In this case, Coleman filed his claim approximately 22 months after it accrued and withdrew his claim about 31 months after it accrued. Chadron argues that the time to begin suit is not extended by 6 months because the 2-year statute of limitations would not otherwise expire before the end of the 6-month period. Chadron also argues that the 2-year period in which to begin suit expired before Coleman ever withdrew his claim from the board.

The source of Coleman's predicament is § 81-8,213. As stated, that section mandates that before suit may be filed in court, a claim may not be withdrawn from the State Claims Board for at least 6 months. In order to comply with § 81-8,213, Coleman, who filed his claim with the board in the 22d month after his claim accrued, was prevented from filing his lawsuit in the district court before the 24-month statute of limitations ran. In essence, one statute prevents filing of a claim in court and another section requires filing of that same claim in court. This appears to be a classic example of the "right hand not knowing what the left hand is doing."

In effect, Chadron argues so be it! It asserts, "These fourth-quarter claimants [those who file their claim with the claims board in the final quarter of the 2-year period after the claim accrues] still have a chance of recovery if the State Claims

Board recognizes the merit of their claim, but by waiting so long to start the process, they foreclose themselves from pursuing the claim in court." Brief for appellee at 24. In light of the dilemma posed by §§ 81-8,213 and 81-8,227 under the facts of this case, Chadron's contention fails to comport with common sense.

As an alternative, Chadron advances what it terms "the constructive denial approach." Under this theory, if the State Claims Board fails to act before the time the statute of limitations runs, the claim is constructively treated as if it had been denied, thereby triggering the 6-month extension prescribed in § 81-8,227. Applied to the facts at hand, Chadron argues, "the constructive denial approach" would extend the time to begin suit to June 14, 1988, which is 2 months before suit was filed. However, this approach circumvents the policy of § 81-8,213. The Legislature has dictated that the claims board be given at least 6 months to consider a claim. There can be any number of reasons justifying this legislative choice. For instance, resolution of cases by the claims board may preserve judicial resources and in turn save the state the expense of litigation. That policy would be frustrated if the claims board was completely bypassed.

The issue at hand is one of statutory construction. In resolving that question, we are bound by the following well-established rules. " 'When considering a series or collections of statutes pertaining to a certain subject matter which are in pari materia, they may be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions of the act are consistent and sensible.' [Citation omitted.]" *Pump & Pantry, Inc. v. City of Grand Island*, 233 Neb. 191, 195-96, 444 N.W.2d 312, 316 (1989). This court will, if possible, try to avoid a construction of a statute which leads to absurd, unjust, or unconscionable results. See *In re Boundaries of McCook P.P. Dist.*, 217 Neb. 11, 347 N.W.2d 554 (1984). Accord *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989) (in construing a statute, it is presumed that the Legislature intended a sensible rather than an absurd result). " ' "In the exposition of statutes, the reason and intention of the lawgiver will control the strict

letter of the law when the latter would lead to palpable injustice or absurdity." [Citation omitted.]' " *Rebman v. School Dist. No. 1*, 178 Neb. 313, 318, 133 N.W.2d 384, 387 (1965).

A statutory scheme which precludes one from withdrawing a claim from the State Claims Board and thereby prevents that person from filing suit before the statute of limitations runs leads to absurd, unjust, or unconscionable results. We, therefore, hold that a claimant who files a tort claim with the Risk Manager of the State Claims Board 18 months or more after his or her claim has accrued, but within the 2-year statute of limitations, has 6 months from the first day on which the claim may be withdrawn from the claims board in which to begin suit. This interpretation ensures that effect is given to the legislative intent embodied in §§ 81-8,213 and 81-8,227 and that both are applied in a consistent and commonsense fashion. Furthermore, fourth-quarter claimants are given the same opportunity as those who file earlier to withdraw their claim and file suit within 6 months thereafter.

In applying the foregoing rule to this case, it is clear that Coleman timely filed his claim in the district court for Dawes County. As stated, Coleman's claim accrued on December 14, 1985, his 21st birthday. It is assumed for purposes of argument, but not decided, that Coleman filed his claim on September 8, 1987, when he first submitted his claim to the claims board on the incorrect form. To this is added the 6-month period under § 81-8,213 during which the claims board is given the opportunity to make final disposition of the claim. Thereafter, Coleman had 6 months from the first date on which the claim could have been withdrawn from the claims board to begin suit. Since Coleman's suit was filed in the district court on August 18, 1988, this action was filed well within the 6-month extension in which to begin suit.

We have also examined *Ragland v. Norris P. P. Dist.*, 208 Neb. 492, 304 N.W.2d 55 (1981), and find it distinguishable from this case. In *Ragland,* the defendant political subdivision allegedly caused damage to the plaintiffs' trees in October 1976. It was assumed for purposes of analysis that the plaintiffs filed their claim with the defendant on June 10, 1977. Suit was not filed until June 13, 1979.

At issue was Neb. Rev. Stat. § 13-919 (Reissue 1987), formerly codified as Neb. Rev. Stat. § 23-2416 (Reissue 1977), which provides that claims must be filed with the local governing body within 1 year after they accrue and that suit must be commenced within 2 years after the claim accrues. Like § 81-8,227, § 13-919 permits the statute of limitations to be extended by 6 months from the mailing of notice to the claimant or the withdrawal of the claim, if the time to begin suit would otherwise expire before the end of the 6-month period. This court decided that the *Ragland* claim was time barred, holding that when the governmental subdivision does not act on a claim within 2 years after the claim accrued and the claimant does not withdraw the claim within 2 years after the claim accrued, all suits permitted by the Political Subdivisions Tort Claims Act are barred and the additional 6-month period granted under particular circumstances does not apply.

Although both Neb. Rev. Stat. § 13-906 (Reissue 1987) and § 81-8,213 require that the claim repose for 6 months with a local governing body or the State Claims Board, as the case may be, before it can be withdrawn, the Political Subdivisions Tort Claims Act does not prevent the claimant from filing suit before the statute of limitations to do so runs. This is so because the Political Subdivisions Tort Claims Act permits an additional year after the claim has been filed with the local governing body for suit to be filed. For that reason, *Ragland, supra,* is inapplicable to the facts of this case.

Our decision regarding Coleman's initial assignment of error renders it unnecessary to reach his second assignment of error. The trial court's summary judgment is reversed and the cause remanded to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.