REQUESTED BY: Lori McClurg, Director Department of Administrative Services
LB 134 was passed by the Legislature in 1999 and subsequently approved by the Governor. That bill deals with the child care leave benefits accorded to adoptive parents, and states as is pertinent:
. . . whenever an employer, including a governmental agency, permits an employee to take a leave of absence upon the birth of the employee's child, an adoptive parent, following the commencement of the parent child relationship, is entitled to the same leave upon the same terms.
1999 Neb. Laws LB 134, § 1. The bill also contains certain exceptions to the requirements discussed above, including exceptions for children over eight years of age who do not have special needs. You have requested our opinion with respect to two questions involving the application of LB 134 to the sick leave granted state employees.
In your opinion request letter, you discuss several aspects of the manner in which sick leave is granted to state employees and the manner in which use of sick leave by state employees is administered. Employees of the State of Nebraska receive sick leave as specified in Neb. Rev. Stat. § 81-1320 (1994) or as set out in the labor contracts between the State and the various unions representing those employees. Those labor contracts and the Nebraska Classified System Personnel Rules (the "Personnel Rules"), 273 NAC 1-16, then define the conditions under which sick leave may be used. Sick leave is ordinarily granted to a state employee in four instances:
 A. When that employee is unable to perform his or her duties because of disability;
 B. When that employee needs a medical examination or medical treatment;
 C. When the employee's presence in the workplace would jeopardize the health of others because of the danger of exposure to a contagious disease; or,
 D. when the illness, disability or injury of an immediate family member of that employee demands the employee's presence.
273 NAC 9-005.01. Consistent with that policy, state employees who are mothers of newborn children are eligible for paid sick leave because they are considered to be temporarily disabled as a result of childbirth. You state that, under normal conditions, those employees are allowed to use six weeks of previously earned sick leave for recovery from the birth of a child. Additional accrued sick leave may also be used when the new mother suffers from complications that prolong her recovery. Apart from that use of paid sick leave, a state employee who is the mother of a newborn child must use unpaid Family Leave to care for the child or for bonding. Family Leave is established in a portion of the Personnel Rules separate from the provisions dealing with sick leave, and is available to a state employee "because of the birth of a child of the employee" or "because of the adoption or placement of a foster care child with the employee," among other reasons. 273 NAC 9-015.02.
The Personnel Rules and the management policies adopted by the Personnel Division of the Department of Administrative Services prescribe somewhat different rules for the use of paid sick leave by state employees who are the fathers of newborn children. Those fathers are apparently not eligible for paid sick leave upon the birth of a child other than pursuant to 273 NAC 9-005.017(D) and to be present at the birth. However, as is the case with mothers who are state employees, fathers who are state employees can take unpaid Family Leave for the care of a newborn child or for bonding.
In light of the various statutes, personnel rules and policies discussed above, you first ask, "[d]oes LB 134 require that we allow mothers of newly adopted children, to use up to six weeks of accrued paid sick leave for care of the child or bonding with the child?"
LB 134, with certain specified exceptions, allows an adoptive parent to take the same "leave of absence" for care of an adoptive child as other employees receive upon the natural birth of a child. The phrase "leave of absence" is not defined in the statute, and it is unclear from the face of LB 134 exactly what is included within the parameters of that language. When statutory language is ambiguous and must be construed, recourse should be had to its legislative history for the purpose of discovering the Legislature's intent. Coleman v. Chadron State College,237 Neb. 491, 466 N.W.2d 526 (1991). In Nebraska, one of the fundamental principles of statutory construction is to attempt to ascertain the legislative intent, and to give effect to that intent. Pump Pantry, Inc. v. City of Grand Island, 233 Neb. 191, 444 N.W.2d 312
(1989). To ascertain the intent of the Legislature, courts may examine the legislative history of the legislative act in question. Id. As a result, we have reviewed the legislative history of LB 134 to determine if that history sheds any light on what the Legislature intended to include within the phrase "leave of absence" as it is used in the bill, and what the Legislature intended the provisions of that bill to reach.
LB 134 was introduced by Senator Dwight Pedersen. Senator Pedersen's statements during the committee hearings and the floor debate on the bill make it quite clear that he intended the provisions of the bill to include the sick leave granted to parents of a child through natural birth. For example, during floor debate, Senator Pedersen stated:
 Members of the Legislature, LB 134 simply provides that if an employer allows a certain amount of time off with pay, either sick leave or vacation leave, for an employee having a baby the natural way, they must also allow the same amount of time for a person adopting a baby. . . . If an employee only allows two weeks paid leave for a natural birth, then an employee who adopts would only be allowed . . . employer, excuse me, allows only that amount of two weeks paid leave for natural birth, then the employee who adopts would only be allowed the two weeks leave. However, if an employee is allowed six weeks paid leave for the natural birth of a baby, then an employee who adopts would also be given six weeks under the terms of this bill. If the employer does not authorize paid leave for the birth of a child, then the family leave bill would kick in and the employee would be allowed to take unpaid leave up to the 12 weeks, as would an adoptive parent. It is an issue of equal treatment of employees.
Floor Debate on LB 134, 96th Neb. Leg., 1st Sess. 995, 996 (February 11, 1999) (Statement of Sen. Dw. Pedersen). Based upon this expression of legislative intent, it appears to us that the phrase "leave of absence" used in LB 134 was intended to include sick leave granted to a parent as a result of a natural birth.[1] Therefore, we believe that the provisions of LB 134 apply when the "leave of absence" granted an employee for a natural birth is based upon sick leave, and for that reason, LB 134 does require that you allow mothers of newly adopted children the same sick leave allowed to state employees who are new mothers by natural birth. Since those mothers by natural birth are allowed to use up to six weeks of accrued paid sick leave for care of their baby, adoptive mothers who are state employees should be allowed to use up to six weeks of paid sick leave to care for their adopted child or for bonding with the child.
Your second question goes to the rights of state employees who are new adoptive fathers. You ask, "[d]oes LB 134 require that we allow fathers of newly adopted children, to use up to six weeks of accrued paid sick leave for care of the child or bonding with the child?"
The legislative history of LB 134 cited above places great emphasis on "equal treatment of employees." If employees who are parents by natural birth get two weeks of paid leave to care for newborn children, employees who are new adoptive parents also get two weeks of paid leave under LB 134. Similarly, if employees who are parents by natural birth get six weeks of paid leave to care for newborn children, employees who are new adoptive parents also get six weeks of paid leave under that bill. Given this emphasis on equal treatment under LB 134, it seems to us that state employees who are fathers of newly adopted children should get leave on the same terms as state employees who are fathers of new babies by natural birth. Since you indicated that the latter group does not get six weeks of sick leave, but is allowed to use sick leave only pursuant to 273 NAC 9-005.01(D) and for the time to be present for the birth, then new adoptive fathers should have a similar leave allowance. For example, they might be allowed to use sick leave for the day the adopted child first enters their family. In any event, we do not believe that LB 134 requires that state employees who are new adoptive fathers should get the six weeks of paid sick leave allowed state employees who are the mothers of newborn infants.
Sincerely yours,
 DON STENBERG Attorney General
 Dale A. Comer Assistant Attorney General
Approved by:
DON STENBERG 
Attorney General
[1] This interpretation of the phrase "leave of absence" also makes sense because the provisions of LB 134 apply to both governmental and private employers. While the State offers "sick leave" to new mothers, private employers could offer a number of types of paid leave to employees with new babies. Reading the phrase "leave of absence" broadly, therefore, reaches a number of types of paid leave, and better implements the bill's obvious intent that adoptive parents should receive the same treatment as parents by natural birth.