ORCHARD HILL NEIGHBORHOOD ASSOCIATION ET AL., APPELLEES,
v. ORCHARD HILL MERCANTILE, L.L.C., APPELLANT, AND
NEBRASKA LIQUOR CONTROL COMMISSION, APPELLEE.

738 N.W.2d 820

Filed August 17, 2007. No. S-06-228.

Michael J. Lehan for appellant.

Steven M. Virgil, and Matthew Andrew, Senior Certified Law Student, of Community Economic Development Clinic, Creighton University School of Law, for appellees Orchard Hill Neighborhood Association et al.

No appearance for appellee Nebraska Liquor Control Commission.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The Orchard Hill Neighborhood Association and neighborhood residents (collectively the Objectors) appealed the order of the Nebraska Liquor Control Commission (Commission) granting a liquor license to Orchard Hill Mercantile, doing business as Hamilton Outlet Tobacco (Mercantile). On review, the district court found that under Neb. Rev. Stat. § 53-132(2) (Reissue 2004), the "public convenience and necessity" did not require the issuance of the liquor license. The court reversed the Commission's decision, and Mercantile appeals. Because competent evidence supports the district court's decision, we affirm.

## I. BACKGROUND

Mercantile applied for a retail class D liquor license at 4026 Hamilton Street, Omaha, Nebraska. With the license, Mercantile could sell off-sale package liquor. Under Neb. Rev. Stat. § 53-133 (Reissue 2004), two neighbors and a pastor of a nearby church protested.

### 1. HEARING BEFORE THE COMMISSION

(a) Expert Testimony Against
Issuing the License

Under Neb. Rev. Stat. § 84-914(1) (Reissue 1999), the Objectors requested the Commission comply with the rules of evidence. Two experts testified for the Objectors. The first expert was Dr. Rebecca K. Murray, who is an assistant professor of sociology and anthropology at Creighton University. She received her master's degree and doctorate from the University of Nebraska at Omaha. Her research focuses on environmental criminology—studying how urban structures affect crime within particular areas. Although she is not familiar with the Hamilton Street neighborhood (Neighborhood), she has studied how liquor establishments affect automobile thefts and assaults in Omaha; she testified that a correlation exists between crime and liquor establishments. She opined that assaults rise by 1.0959 per year per block when increasing the number of off-sale

liquor-serving establishments from zero to one; assaults rise by 2.0117 when increasing the number of liquor establishments from one to two. Presently, one liquor store—about one-half to one block from Mercantile's proposed location—serves the Neighborhood. Presently, two to three assaults occur per year in the Neighborhood. Murray stated her research methodology is generally accepted in her field.

Relying on her research, training, and education, Murray opined that issuing a liquor license to Mercantile at the proposed location would not serve the public's interests. She added that a liquor establishment would increase crime anywhere in Omaha, but that the Neighborhood, a residential area, already has a higher crime rate compared with the city as a whole. She further stated that her opinion was her "best-guess" based on her research.

The second expert was Dr. Russell L. Smith, who teaches urban studies and public administration at the University of Nebraska at Omaha. He has a doctorate in political science. He focuses on public policy, urban revitalization, and community development. Smith is familiar with the Neighborhood because he works with programs and projects concerning the Neighborhood. In addition, he has conducted surveys and focus groups on issues regarding the Neighborhood. He testified that the Neighborhood is in an "advanced state of decline," as evidenced by the number of vacant lots, declines in housing values, and a population decrease. He stated that the deteriorated commercial strip showed promise for revitalization efforts, but that putting a liquor store there would be a "disservice" to the Neighborhood. Smith conducted a survey that found 42 percent of the respondents have concerns about illegal alcohol use in the Neighborhood. He opined that Mercantile's liquor store would negatively affect the surrounding community.

(b) Other Evidence Regarding the Neighborhood

The record reflects that while graffiti, loitering, and traffic violations have increased, the Neighborhood is improving. The Omaha Community Foundation has invested about $250,000 in private donations for community development, including home improvement, a community gardening project, and after-school

programs. Also, the city of Omaha is preparing a redevelopment plan for the area.

### (c) Mercantile's Evidence Supporting the License

The proposed site complies with zoning requirements, and sanitary and sewer systems are in place. The city recommended that the Commission grant the license. Also, Mercantile's owners have invested about $1.5 million, improving several buildings in the Neighborhood. Charles Kline, an owner, testified that more than 400 people would like Mercantile to provide liquor at the proposed location. He testified that the site would have adequate parking—15 parking spots and an estimated 200 customers per day. Contrary to the expert testimony, Kline testified that within the last year or two, property values have increased. Mercantile's owners believe their liquor store will serve the public interest.

### (d) The Commission's Decision

At the hearing's conclusion, the Commission unanimously voted to approve the license, and on July 5, 2005, the Commission entered its order.

### 2. THE DISTRICT COURT DECISION

The Objectors appealed the Commission's decision to the district court. They contended that the Commission's order issuing the license was arbitrary and capricious and that the evidence did not support it.

The district court, reviewing the record of the Commission de novo,[1] found that under the Nebraska Liquor Control Act,[2] the present or future public convenience and necessity did not require the liquor license. The court relied on "the slim margin by which the City Council voted to approve [Mercantile's] application; the existence of a strong, proactive citizen protest; and the existence of another liquor-selling establishment in such close proximity to the proposed location." The court further found that issuing the license would frustrate the positive trend occurring in the

---

[1] See Neb. Rev. Stat. § 84-917(5)(a) (Reissue 1999).

[2] Neb. Rev. Stat. §§ 53-101 to 53-1,122 (Reissue 2004).

Neighborhood. The court balanced these concerns against its findings that (1) Mercantile's owners are qualified, (2) the site complied with zoning and sanitation requirements, and (3) the site presented no parking concerns.

## II. ASSIGNMENTS OF ERROR

Mercantile assigns that the district court erred in (1) reversing the Commission's decision as arbitrary, unreasonable, and not supported by competent evidence; (2) considering expert testimony based on "guess and conjecture" which was not relevant to the issues; (3) considering expert testimony when the record contains no findings that the trier of fact performed its role as a gatekeeper; (4) interpreting § 53-132(3); (5) considering only one element of the factors set forth in § 53-132(3); (6) relying on *City of Lincoln v. Nebraska Liquor Control Comm.*[3] in determining that a single factor may require reversal of an order of the Commission; and (7) failing to dismiss Orchard Hill Neighborhood Association for lack of standing.

## III. STANDARD OF REVIEW

A trial court has discretion in deciding whether a witness is qualified to testify as an expert, and we will not disturb the trial court's decision unless it is clearly erroneous.[4]

Under the Administrative Procedure Act,[5] we may reverse, vacate, or modify a district court's judgment or final order for errors appearing on the record.[6] When reviewing a district court's order under the Administrative Procedure Act for errors appearing on the record, we look at whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.[7]

---

[3] *City of Lincoln v. Nebraska Liquor Control Comm.*, 261 Neb. 783, 626 N.W.2d 518 (2001).

[4] See *Carlson v. Okerstrom*, 267 Neb. 397, 675 N.W.2d 89 (2004).

[5] Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 1999 & Cum. Supp. 2006).

[6] See *Stejskal v. Department of Admin. Servs.*, 266 Neb. 346, 665 N.W.2d 576 (2003). See, also, § 84-918(3).

[7] *Stejskal v. Department of Admin. Servs., supra* note 6.

## IV. ANALYSIS

### 1. THE CONTROVERSY IS NOT MOOT

Before reaching the legal issues presented, we address a jurisdictional issue raised by the Objectors. The Objectors contend that Mercantile's appeal is moot. Under Nebraska statute, a liquor license cannot exceed 1 year.[8] The Objectors argue that more than 1 year has passed since July 5, 2005, when the Commission first issued a liquor license to Mercantile. The record shows that Mercantile attempted to renew its license but that the Commission denied its request because of the district court's decision. The Objectors argue that because Mercantile's liquor license has expired and the Commission has not renewed it, the Commission cannot reinstate it. They argue the case is moot and that we cannot grant relief on appeal. We disagree.

Although not a constitutional prerequisite for jurisdiction, an actual case or controversy is necessary for the exercise of judicial power.[9] A case becomes moot when the issues initially presented in the litigation cease to exist, when the litigants lack a legally cognizable interest in the outcome of litigation, or when the litigants seek to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive.[10]

The Maryland Court of Appeals considered a mootness argument under analogous facts. In *Bethesda Management Serv. v. Dep't*,[11] the appellants held licenses to operate employment agencies. The Maryland Department of Licensing and Regulation, Division of Labor and Industry, revoked the appellants' licenses, and they appealed. The department argued that the case was moot because the revoked licenses lasted for 1 year and would have expired by their own terms by the time the case reached the appellate court. The appellants had unsuccessfully applied for new licenses for the next year. The court, however, concluded

---

[8] § 53-149.

[9] See *Johnston v. Nebraska Dept. of Corr. Servs.*, 270 Neb. 987, 709 N.W.2d 321 (2006).

[10] *Id.*

[11] *Bethesda Management Serv. v. Dep't*, 276 Md. 619, 350 A.2d 390 (1976).

that the case still presented a live controversy. The court reasoned that if the revocation stood, the department would not issue a new license to the appellants. The court stated, "[I]f it should be ultimately determined that the revocations were unwarranted, and no other cognizable grounds for denial existed, appellants would be entitled to new licenses."[12] The court held that the appellants had a real interest in the outcome of the case.

Here, although Mercantile's original liquor license has expired, the controversy is not moot. Nebraska statutes establish a renewal privilege, and liquor licensees are entitled to renewal, absent a change of circumstances indicated on the licensee's renewal application.[13] We have recognized that a liquor licensee has a constitutionally protected interest in obtaining renewal of an existing license.[14] That interest would be jeopardized if the license were wrongfully taken away. Because Mercantile has an interest in judicial resolution beyond the expiration of its original license, the controversy is not moot.

## 2. THE HEARING OFFICER PROPERLY ADMITTED THE EXPERT TESTIMONY

Mercantile contends that the testimony of Murray, Smith, and another witness, Dr. Andrew Jameton, was inadmissible as expert testimony. Under Neb. Evid. R. 702,[15] a witness can testify concerning scientific, technical, or other specialized knowledge only if the witness qualifies as an expert. Whether a witness qualifies as an expert is a preliminary question for the trial court.[16] A trial court is allowed discretion in deciding whether a witness qualifies to testify as an expert. And unless

---

[12] *Id.* at 626, 350 A.2d at 394.

[13] *Grand Island Latin Club v. Nebraska Liq. Cont. Comm.*, 251 Neb. 61, 554 N.W.2d 778 (1996); *Pump & Pantry, Inc. v. City of Grand Island*, 233 Neb. 191, 444 N.W.2d 312 (1989). See, also, §§ 53-135 and 53-135.02.

[14] *Grand Island Latin Club v. Nebraska Liq. Cont. Comm., supra* note 13.

[15] Neb. Rev. Stat. § 27-702 (Reissue 1995).

[16] *Carlson v. Okerstrom, supra* note 4.

the court's finding is clearly erroneous, we will not disturb that decision on appeal.[17]

### (a) Murray Provided Sufficient Foundation for Her Opinion

 Mercantile contends that Murray based her testimony on a " 'best guess scenario' " and that she lacked knowledge of the Neighborhood.[18] Mercantile's objection appears to be a foundational challenge, and that is how we will address it. A court should not admit expert testimony if it appears the witness does not possess facts that will enable him or her to express an accurate conclusion, as distinguished from a mere guess or conjecture.[19] That is, a court should reject an expert's opinion if the record does not support a finding that the expert had a sufficient foundation for his or her opinion.[20]

We discussed an evidentiary foundation issue in *Scurlocke v. Hansen*.[21] There, the witness testified regarding the cost to restore trees damaged by a bulldozer. He, however, had no experience estimating such damages, he estimated the cost to restore the property to its original condition without having seen it before the damage, he took no measurements, and his "methodology" consisted of "walking around the [plaintiff's] property and trying to 'visualize' where trees had been prior [to the damage]."[22] We decided the skeletal foundation could not support his opinion.

In contrast, Murray fleshed out the foundation for her opinion. She relied on her research of the city. She examined felonious assaults and automobile thefts occurring in the city and the number of liquor-serving establishments. She used census data to control for other variables, including income, racial composition,

---

[17] *Id.*

[18] Brief for appellant at 11.

[19] See, *City of Lincoln v. Realty Trust Group*, 270 Neb. 587, 705 N.W.2d 432 (2005); *Scurlocke v. Hansen*, 268 Neb. 548, 684 N.W.2d 565 (2004).

[20] See *City of Lincoln v. Realty Trust Group, supra* note 19.

[21] *Scurlocke v. Hansen, supra* note 19.

[22] *Id.* at 552, 684 N.W.2d at 569.

and land ownership at the block level. She testified that based on her research of a citywide trend, crime would increase in the Neighborhood with the establishment of an additional liquor store. Murray also testified the Neighborhood already averaged more crime per year than other areas, suggesting that an increase in crime there could be more detrimental.

Mercantile attempts to characterize Murray's testimony as "mere guess or conjecture"[23] under *Scurlocke* because she testified that her opinion regarding the effect of a liquor store in the Neighborhood was her "best-guess." The record reveals, however, that Murray clarified that any opinion about future events has some uncertainty, and repeated that she based her opinion on her research. We believe this case is distinguishable from *Scurlocke*. Murray's background and research provided sufficient foundation for her opinion. The hearing officer did not clearly err in admitting Murray's testimony.

### (b) Mercantile Did Not Raise a *Daubert* Challenge at the Commission Hearing

Mercantile also challenges Smith's and Jameton's testimony. It argues that they failed to explain their methodology and whether it was applied in a reliable manner. Mercantile appears to invoke a challenge under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[24] and *Schafersman v. Agland Coop*.[25] But the record shows that Mercantile, at the Commission hearing, did not object because of methodology. Instead, Mercantile objected to Smith's testimony on relevance, hearsay, and foundation. And it objected to Jameton's testimony as hearsay. Further, Mercantile did not challenge either witness' methodology before the district court.

When an issue is raised for the first time in this court, we will disregard it because the district court cannot commit error in resolving an issue never presented and submitted to it

---

[23] Brief for appellant at 11.

[24] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

[25] *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001). See, also, *City of Lincoln v. Realty Trust Group, supra* note 19.

for disposition.[26] Because Mercantile did not object before the Commission or the district court, we do not address this issue.

### 3. The District Court Properly Considered the Criteria in § 53-132(3)

Mercantile argues that the district court failed to consider all of the statutory criteria in § 53-132(3) in determining whether the Commission correctly issued the liquor license. Section 53-132(2) of the Nebraska Liquor Control Act provides the requirements for issuing a retail liquor license. To issue a retail liquor license, the Commission must find that the license satisfies each condition specified in § 53-132(2)(a) through (d).[27] Subsection (d) provides that the issuance of a license must be "required by the present or future public convenience and necessity." In deciding whether an application meets these requirements, the Commission must consider each factor listed in § 53-132(3)(a) through (j).[28] When the Commission conducted the hearing, those factors were:

(a) The recommendation of the local governing body;

(b) The existence of a citizens' protest made in accordance with section 53-133;

(c) The existing population of the city, village, or county and its projected growth;

(d) The nature of the neighborhood or community of the location of the proposed licensed premises;

(e) The existence or absence of other retail licenses or craft brewery licenses with similar privileges within the neighborhood or community of the location of the proposed licensed premises;

(f) The existing motor vehicle and pedestrian traffic flow in the vicinity of the proposed licensed premises;

(g) The adequacy of existing law enforcement;

(h) Zoning restrictions;

---

[26] See *Ways v. Shively*, 264 Neb. 250, 646 N.W.2d 621 (2002).

[27] *City of Lincoln v. Nebraska Liquor Control Comm., supra* note 3.

[28] *Id.*

(i) The sanitation or sanitary conditions on or about the proposed licensed premises; and

(j) Whether the type of business or activity proposed to be operated in conjunction with the proposed license is and will be consistent with the public interest.[29]

We discussed the above factors in *City of Lincoln v. Nebraska Liquor Control Comm.*[30] There, we considered whether the Commission properly issued a liquor license when the proposed location failed to meet zoning requirements. We stated that no one factor invariably controls the decision to grant or deny a liquor license. All of the factors in § 53-132(3) must be considered in determining whether an applicant meets the requirements of § 53-132(2). In *City of Lincoln*, we decided that because the location did not comply with zoning requirements, the Commission should have denied the license.

In its order, the district court, citing our decision in *City of Lincoln*, stated that "[n]o specific factor 'controls' the decision to grant or deny an application for a liquor license, but in some cases, a single factor may weigh so heavily that it tips the balance one way or the other." Mercantile apparently interprets this statement to mean that the district court relied solely on whether the liquor license was in the public interest, the factor listed in § 53-132(j). The court's order, however, shows it considered all of the statutory factors. In its order, the court listed the factors in § 53-132(3) that the Commission must consider in deciding whether to approve or deny a license application. The court specifically found that several factors weighed against issuing the license and that others weighed in favor of the license. After balancing the factors, the court decided that the "present or future public convenience and necessity" did not require the license under § 53-132(2)(d). In reaching its decision, the court properly considered all of the factors listed in § 53-132(3).

---

[29] § 53-132(3).

[30] *City of Lincoln v. Nebraska Liquor Control Comm., supra* note 3.

### 4. COMPETENT EVIDENCE SUPPORTS
### THE DISTRICT COURT'S DECISION

■■■ Mercantile argues that the district court's decision was arbitrary and capricious and lacked competent evidence to support it. When reviewing a district court's order under the Administrative Procedure Act for errors appearing on the record, we look at whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.[31] We will not substitute our factual findings for those of the district court when competent evidence supports those findings.[32]

The district court's order contains a detailed summary of the evidence presented to the Commission. The court examined evidence on all of the statutory factors. In deciding that the Commission should have denied the liquor license, the court wrote:

> [T]his Court finds that the slim margin by which the City Council voted to approve [Mercantile's] application; the existence of a strong, proactive citizen protest; and the existence of another liquor-selling establishment in such close proximity to the proposed location militate strongly against issuance of a license to [Mercantile]. This Court further finds that the nature of the Orchard Hill neighborhood and community, though in a state of decline, is benefiting from the substantial efforts and contributions of public and private entities and donors, and that this positive trend would likely be frustrated by the issuance of a liquor license to [Mercantile]. While this Court finds that there are no zoning or sanitation impediments to granting a license to [Mercantile], that traffic and parking concerns are minor, and that [Mercantile] is in all respects qualified to operate a stable and relatively secure liquor-selling establishment, these factors, on balance, are insufficient to show, as [Mercantile] must, that the issuance of the license

---

[31] *Stejskal v. Department of Admin. Servs., supra* note 6.

[32] See *id.*

to [Mercantile] "is or will be required by the present or future public convenience and necessity."

Adhering to our standard of review for error on the record, we believe the record supports the district court's decision. Expert testimony establishes that a liquor license would negatively affect the Neighborhood and that crime would likely increase. The record contains a petition signed by more than 400 Neighborhood residents opposing the liquor license. Testimony established that another liquor establishment is presently located within one block from Mercantile's proposed location. Although some evidence does weigh in favor of issuing the liquor license, sufficient competent evidence supports the court's decision. We recognize that the Commission also considered the evidence in deciding to issue the liquor license. But under our standard of review, we cannot say that the district court's decision to overturn the Commission's decision was arbitrary, capricious, or unreasonable. The district court did not err in ordering the Commission to deny the license to Mercantile.

## V. CONCLUSION

We conclude that Mercantile's appeal is not moot because Mercantile has an existing interest in obtaining relief from the district court's denial of its liquor license. Because competent evidence—including properly admitted expert testimony—supports the court's decision, we affirm. The remaining issues are unnecessary to resolve this case, and we need not address them on appeal.[33]

AFFIRMED.

---

[33] See *Ferer v. Erickson, Sederstrom*, 272 Neb. 113, 718 N.W.2d 501 (2006).