COURTNEY KUEBLER, APPELLEE, V. ALVIN ABRAMSON, DIRECTOR, DEPARTMENT OF MOTOR VEHICLES OF THE STATE OF NEBRASKA, APPELLANT.

544 N.W.2d 513

Filed March 12, 1996.   No. A–94–1069.

Don Stenberg, Attorney General, and Jay C. Hinsley for appellant.

Vikki S. Stamm, of Ross, Schroeder, Brauer & Romatzke, for appellee.

HANNON, SIEVERS, and INBODY, Judges.

SIEVERS, Judge.

The director of the Department of Motor Vehicles (Department) appeals the district court order which reversed the Department's order revoking Courtney Kuebler's driver's license. Kuebler's license was revoked by the Department under the administrative license revocation procedures after her arrest for driving while intoxicated. The issue in this appeal is the manner of service upon Kuebler of notice of intent to administratively revoke her driver's license.

## STATEMENT OF FACTS

On April 16, 1994, Kearney police officer Scott Gronewoller was on patrol when he observed Kuebler's gray Honda Civic weaving in the roadway. Gronewoller then observed the Honda cross the centerline, cross back, and make a wide right turn, nearly striking a parked vehicle. As a result, Gronewoller stopped the vehicle. Gronewoller smelled alcohol coming from inside the vehicle and observed that Kuebler's eyes were bloodshot. Gronewoller asked Kuebler to come back to the patrol car to perform a number of field sobriety tests. Prior to administering a preliminary breath test, Gronewoller advised Kuebler of the consequences of failing the test and of refusing to take the test. Gronewoller then placed Kuebler under arrest and read her the "Administrative License Revocation Advisement Post Arrest" form, advising her of the consequences of taking or refusing to take a blood test.

Kuebler agreed to submit to a blood test, and Gronewoller transported Kuebler to Good Samaritan Hospital, where blood was drawn, sealed as evidence, and left with a lab technician to be tested. Gronewoller received the results of the blood test via certified mail 10 days later on April 26, 1994, and the results indicated a blood alcohol content of .18 grams of alcohol per 100 milliliters of blood. After receiving the results, Gronewoller completed a sworn report, which was sent to the Department. Gronewoller did not make any attempt to personally serve the report on Kuebler, although he knew she resided in Buffalo County and knew her address, nor did any other officer attempt to personally serve the report upon Kuebler.

A copy of the sworn report, sent by the Department to Kuebler via certified mail, states that the sworn report, issued on May 2, 1994, would serve as a temporary license for 30 days from the date of the notice and, therefore, would expire on June 1, 1994. Enclosed with the copy of the sworn report was a cover letter, sent by the Department, which explained that the sworn report was filed by a law enforcement officer, alleging that Kuebler was arrested for driving while intoxicated, and that she could contest the revocation by following the procedure set forth on the back of the report. A petition to request an administrative hearing was also enclosed.

An administrative hearing was held on May 26, 1994. At the hearing, Kuebler argued that under the administrative license revocation statute, Neb. Rev. Stat. § 60–6,205 (Reissue 1993), the arresting officer must make some attempt to personally serve the driver with notice before resorting to sending the report to the Department, which then serves the notice upon the driver by certified mail. Alleging that she had been improperly served, Kuebler claimed her license should not be revoked because the Department did not have jurisdiction over her. The Department rejected her argument and revoked her license. Kuebler appealed to the district court.

The district court found that the Department had failed to properly serve Kuebler because the arresting officer made no attempt to personally serve notice of the revocation upon Kuebler, nor did he offer any explanation as to why he would have been unable to serve that notice. The court found that because the Department failed to gain jurisdiction over Kuebler, the revocation must be reversed. The Department appeals.

## ASSIGNMENT OF ERROR

The Department alleges that the district court erred when it found that the arresting officer is required to attempt personal service of the notice of revocation and erred when it reversed the Department's order of revocation.

## STANDARD OF REVIEW

■ Statutory interpretation is a matter of law, and an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determination made by the

court below. *Abdullah v. Nebraska Dept. of Corr. Servs.*, 245 Neb. 545, 513 N.W.2d 877 (1994).

## ANALYSIS

Under § 60–6,205(3), if a person arrested for driving while intoxicated submits to a chemical test of blood or breath which reveals that the driver has a blood alcohol content of .10 or greater, the arresting officer must immediately give verbal notice to the driver of the intention to immediately impound and revoke the driver's license, which revocation will automatically begin 30 days after arrest unless the driver petitions for a hearing. Under this section, the arresting officer is required to immediately file a sworn report, which must state (1) that the driver was validly arrested for driving while intoxicated, (2) that the driver was requested to submit to the test, (3) that the driver was advised of the consequences of submitting to the test, and (4) that the driver submitted to the test, the type of test, and the results of such test.

Under § 60–6,205(4), an arresting officer who files a sworn report under § 60–6,205(3) must serve notice of the revocation upon the arrested person, and the revocation becomes effective 30 days after the date of the arrest. The notice explains administrative license revocation and the driver's rights. The officer is also required to give the driver an addressed envelope and a petition to request a hearing. If the driver has an operator's license, the arresting officer is required to take possession of the license and issue a temporary license, valid for 30 days.

Section 60,6–205(5) provides:

(a) If a peace officer is *unable* to serve the notice of revocation as required by subsection (4) of this section following the receipt of results of a chemical test which indicate the presence of alcohol [in violation of the driving while intoxicated statute], the peace officer shall forward to the director a sworn report containing the information prescribed by subsection (3) of this section immediately upon receipt of the results of the chemical test.

(b) Upon receipt of the report, the director shall serve the notice of revocation on the arrested person by certified

. . . mail to the address appearing on the records of the director. . . . The revocation shall be effective thirty days after the date of mailing.

(Emphasis supplied.) Subsection (5)(b) also requires that the director must send the driver an addressed envelope and a petition to request a hearing.

Service of the notice was by the Department, not the arresting officer. The case at hand turns on the meaning of "unable to serve." Kuebler alleges that "unable" implies that the arresting officer must make an attempt to serve the notice before resorting to filing the sworn report and requiring the Department to serve notice. The Department alleges that "unable" means that any time the blood, breath, or urine test results are not immediately available at the time of arrest or detention of the driver, the arresting officer is "unable" to serve notice, and therefore the provisions of § 60-6,205(5) should apply, allowing service via certified mail by the Department. Typically, breath test results are immediately known to the arresting officer, but not so with blood or urine test results.

■ "A statute is open for construction when the language used requires interpretation or may reasonably be considered ambiguous." *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue*, 248 Neb. 518, 525, 537 N.W.2d 312, 317 (1995). Because "unable to serve" is not specifically defined in the statute, and may reasonably be considered ambiguous, we must interpret this phrase, as used in § 60-6,205(5)(a). Interpretation of a statute requires the court to determine and give effect to the intent of the Legislature and the purpose intended to be advanced by adoption of the statute, as can be ascertained from the entire language of the statute, given the plain, ordinary, and popular sense of the statute's language. *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue, supra.*

L.B. 291, adopted by the Legislature in 1992, first instituted the administrative license revocation procedures as found in § 60-6,205. After its introduction, L.B. 291 was substantially amended. The amendment containing the current provisions found in § 60-6,205 which are at issue here was introduced by Senator Doug Kristensen, who gave the following interpretation of the procedures under that statute:

At the time of your stop, if you refuse, or if you test over .10, as usual procedure, your license will be taken and you will be given a petition, and you will be told that you have 10 days to file this petition with the Department of Motor Vehicles. . . . If you have your license on your person at the time, you'll surrender it. What happens if you have a blood test and you don't have test results immediately available? As soon as the blood tests are back, those are sent to the Department of Motor Vehicles. The Department of Motor Vehicles will then mail you a letter telling you that your license will be revoked within 30 days of mailing of the notice. You then have 10 days, from the time you receive that notice, to file your petition, if you choose to challenge the administrative hearing.

Floor Debate, L.B. 291, Transportation Committee, 92d Leg., 2d Sess. 8566–67 (Feb. 4, 1992).

■■■ In resolving a question of statutory construction, we are bound by the following rules: First, when considering a series or collection of statutes pertaining to a certain subject matter, which are in pari materia, the statutes may be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions of the act are perceived as consistent and sensible. *Coleman v. Chadron State College*, 237 Neb. 491, 466 N.W.2d 526 (1991). Second, an appellate court will, if possible, try to avoid construing a statute such that it would lead to an absurd, unjust, or unconscionable result. *Id.* A common sense reading of the statutes leads us to believe that the arresting officer is not required to attempt to personally serve notice upon the arrested driver if the test results for blood alcohol content are not available when the arrest or detention comes to an end.

Drivers are typically released from custody in short order. Recognizing that arrested drivers may not be residents of the city or county where they are arrested, it would be an absurd result to require that an arresting officer, upon receipt of test results days after the arrest, then travel all over the state in order to personally serve the driver with notice before resort could be had to the statutory provision allowing the Department to serve by certified mail. In so concluding, we believe a number of

observations are important. First, the purpose of § 60–6,205(4) is to give notice of the revocation of the driver's license to the arrested driver, to provide a written explanation of administrative license revocation procedure, and to give the driver the petition to be filled out and filed with the Department in order to contest the revocation. In short, § 60–6,205(4) provides for notice to the driver of revocation and delivers to the driver the paperwork needed to contest the revocation.

A sued defendant in a civil proceeding is entitled to notice of the action brought by the plaintiff, receives the supporting paperwork, and receives basic directions on how and when to proceed, i.e., answer or default will be entered. See Neb. Rev. Stat. §§ 25–503.01 and 25–504.01 (Reissue 1989). The service on an arrested driver in an administrative license revocation context and the service on a sued defendant have the same basic purposes in each instance: to give notice, to serve the paperwork, to give basic directions on how to respond, and to advise of the consequences of not responding. Neb. Rev. Stat. § 25–508.01 (Reissue 1989) provides for service of process upon a sued civil defendant by "personal, residence, or *certified mail service.*" (Emphasis supplied.) The method of service is the plaintiff's choice, which suggests that the law views the three methods as being of equal stature. The pertinent observations for the case at hand are that service of notice by certified mail is firmly entrenched in our legal system, that as a method it is not inherently inferior to personal service, and that it is obviously deemed good enough when a citizen is sued.

Consequently, we construe the phrase "unable to serve" to mean those situations where the arrested driver is released before the results of the blood alcohol content test are known, which, of course, is the information which triggers the administrative license revocation procedure. Any other construction of "unable to serve" would result in law enforcement officers having to chase all over the state to attempt personal service of notice when such lengths are not required to be taken in other, equally significant situations where notice must be given. Thus, when a driver is released before the results of blood alcohol content testing are known to the arresting officer, then he or she is "unable to serve" the notice,

and the statutory provisions allowing service by certified mail by the Department become operative. This construction fulfills the purpose of providing notice to the driver of the governmental action, is consistent with the intent of the Legislature, and allows service in a manner which has long been considered adequate in this state in matters of equal or greater significance. In fact, service of notice by certified mail is expressly authorized by the Nebraska Legislature in over 200 different statutes. Many of these provisions involve matters similar in import and with similar administrative procedures to driver's license revocation. Some examples are Neb. Rev. Stat. § 1–141 (Reissue 1991) (disciplinary actions against accountants), Neb. Rev. Stat. § 25–1226 (Reissue 1989) (service of subpoenas), Neb. Rev. Stat. § 60–1413 (Supp. 1995) (revocation of car dealer's license), Neb. Rev. Stat. § 71–1,147.10(3) (Reissue 1990) (suspension of permit to operate pharmacy), Neb. Rev. Stat. § 77–3906 (Supp. 1995) (sale of taxpayer's property for failure to pay state tax), Neb. Rev. Stat. § 79–4,181 (Reissue 1994) (Student Discipline Act/long–term suspension or expulsion from school), and Neb. Rev. Stat. § 81–885.25 (Reissue 1994) (suspension of broker's or salesperson's license by State Real Estate Commission).

Therefore, we determine that the arresting officer was "unable to serve" Kuebler because the results of her blood test were not available to the arresting officer until long after her release from detention. Thus, she was properly served by the Department under § 60–6,205. Consequently, the Department had jurisdiction over Kuebler and could revoke her driver's license. The district court's order is reversed, and the matter is remanded to the district court with directions to reinstate the revocation.

REVERSED AND REMANDED WITH DIRECTIONS.