757 N.W.2d 182 (2008)
276 Neb. 708
INTRALOT, INC., Appellant,
v.
NEBRASKA DEPARTMENT OF REVENUE, Appellee.
No. S-07-933.
Supreme Court of Nebraska.
October 31, 2008.
*183 Douglas R. Aberle and Andrew D. Strotman, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., Lincoln, for appellant.
Jon Bruning, Attorney General, and L. Jay Bartel, for appellee.
HEAVICAN, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

SUMMARY
In February 2005, the Nebraska Department of Revenue (Department) issued a deficiency determination to Intralot, Inc., for consumer's use tax on thermal paper and play slips. Intralot purchased the items to fulfill its contractual obligations with the Department's lottery division. It contended that the items were purchases for resale and not subject to taxation. In October 2006, the Tax Commissioner sustained the Department's deficiency determination. Intralot appealed, and the Lancaster County District Court affirmed the Tax Commissioner's order. We conclude that the Tax Commissioner correctly determined that Intralot's purchases were not purchases for resale and that Intralot made a taxable use of the thermal paper and play slips. The judgment of the district court is affirmed.

BACKGROUND
The parties do not dispute the essential facts. On April 25, 2003, the Department's lottery division (Lottery) issued a comprehensive "Request for Proposals for On-Line Lottery Gaming System and Related Services" (RFP). The RFP's purpose was to secure competitive proposals to allow the Lottery to continue with an on-line lottery gaming system. The RFP requested all proposals to provide the related operational and marketing services required to operate on-line lottery games. This required "an On-line Gaming System consisting of hardware, software, Retailer terminals, communications network, and all other equipment and technology [necessary] to support On-line game operations."
In addition, the RFP required that the contractor supply, warehouse, distribute to on-line retailers, and provide inventory control of all ticket stock, play slips, and *184 other terminal consumables for all on-line terminals.
In response to the Lottery's RFP, Intralot submitted its proposal to the Lottery. Section 2.2.5 of the proposal addressed "Ticket Stock and Playslips." Concerning these items, the proposal identified a primary and a secondary paper supplier for the ticket stock, as required by the RFP. Intralot's proposal offered two options for the weight of the paper stock. It provided that the 3.3-mm paper would be included in the base price of a contract and that the 4.5-mm paper would be offered as an option, with separate pricing. The proposal provided that Intralot would "design and procure all consumable supplies [i.e., ticket stock and play slips] required by the on-line gaming terminals" and that Intralot would "deliver [those] supplies to all Lottery sites and retailers." The proposal described a security system to track inventory of ticket stock from the supplier to Intralot's warehouses to the retailer.
The Lottery selected Intralot to provide the on-line lottery gaming system and related services for the State of Nebraska. In December 2003, the Lottery and Intralot entered a "Contract for On-Line Lottery Gaming System and Related Services." The contract provided that Intralot would install, implement, maintain, and operate for the Lottery an on-line gaming system, as specified in the RFP and as described in the proposal. Intralot was to install the gaming system and have it operational by July 1, 2004. As compensation, Intralot was to receive 2.39 percent of the Lottery's net on-line sales.
As part of its contractual obligation, Intralot purchased thermal paper, or ticket stock, and play slips. Thermal paper is used by Lottery retailers with the on-line terminal to print the on-line lottery tickets purchased by Lottery players. Lottery players use the play slips to indicate the numbers, games, and number of draws for the lottery games they purchase for play at retailer locations. The on-line retailer then uses the play slips to produce a lottery ticket reflecting the player's specific choices. Both items are integral components of the Lottery's on-line gaming system.
In October 2004, the Department notified Intralot it was being audited. The audit was to verify that Intralot had properly reported and paid the appropriate sales, use, withholding, and any other required taxes. The audit resulted in Intralot's being assessed a consumer's use tax liability of $272,914.25, with $11,298.14 in interest and $27,291.41 in penalties. Intralot petitioned for a redetermination of its tax liability. At an informal conference, the Department and Intralot agreed on all issues except the consumer's use tax assessed on Intralot's purchases of thermal paper and play slips.
Between January 1 and November 30, 2004, Intralot purchased $297,839.89 worth of thermal paper and $67,070.67 worth of play slips for distribution to Lottery retailers. The unpaid consumer's use tax assessed for these purchases of thermal paper and play slips was $25,543.74. The corresponding interest was $2,108.29. Intralot was also assessed $2,554.38 in penalties; however, the Tax Commissioner abated the penalties.
Intralot claims that its purchases of thermal paper and play slips are purchases for resale to the Lottery and therefore are not subject to Nebraska's consumer's use tax. In contrast, the Department asserts that Intralot makes a taxable use of the thermal paper and play slips in fulfilling its contract obligations.

ASSIGNMENT OF ERROR
Intralot asserts, restated, that the district court erred in determining that Intralot's *185 purchases of thermal paper and play slips are subject to a use tax.

STANDARD OF REVIEW
Under the Administrative Procedure Act,[1] an appellate court may reverse, vacate, or modify a district court's judgment or final order for errors appearing on the record.[2] When reviewing a district court's order for errors appearing on the record, we look at whether the decision conforms to the law, is supported by competent evidence, and is not arbitrary, capricious, or unreasonable.[3] An appellate court will not substitute its factual findings for those of the district court when competent evidence supports those findings.[4]

ANALYSIS
The question presented is whether Intralot acquired the ticket stock and play slips for its own use in fulfilling its agreement with the Lottery and, therefore, is a purchase subject to a use tax. Or, did Intralot purchase the ticket stock and play slips for resale to the Lottery, exempting it from taxation?

NEBRASKA SALES AND USE TAX
The Nebraska sales and use tax imposes a tax on each item of tangible personal property in this state at some point in the chain of commerce, unless specifically excluded from taxation.[5] As stated in the Tax Commissioner's order, the sales and use tax laws "are complementary in that . . . the use tax is to protect the state's revenues and the business of local merchants by eliminating any advantage to residents in purchasing goods from out of state without the payment of the tax." If the item is purchased in Nebraska, the sales tax applies. If the item is purchased outside Nebraska, the use tax applies.[6] Together, the sales and use taxes provide a uniform tax upon the sale, lease, rental, use, storage, distribution, or other consumption of all tangible personal property.[7]
Intralot claims that its purchases of thermal paper and play slips are exempt from taxation because it resells the items to the Lottery. If Intralot purchases the items for resale to the Lottery, Intralot would not have to pay sales or use tax on the items because purchases made for reselling the items in the normal course of business are not subject to sales and use tax.[8] Furthermore, the Lottery would also not pay a sales tax when it purchases the items from Intralot because items purchased by the state are exempt from taxation.[9] Thus, if Intralot correctly contends that its purchases of thermal paper and play slips are purchases for resale to the Lottery, then the items are not subject to sales and use tax.
*186 Intralot's position hinges upon purchases made for the purpose of reselling the items, i.e., sales for resale, are explicitly exempt from sales and use tax.[10] "Sale for resale" includes "a sale of property ... to any purchaser who is purchasing such property ... for the purpose of reselling it in the normal course of his or her business, either in the form or condition in which it is purchased or as an attachment to or integral part of other property."[11]
The burden rests on Intralot to establish that its purchases of ticket stock and play slips were purchases for resale to the Lottery. If Intralot cannot establish that it purchased the thermal paper and play slips for resale to the Lottery, then the items are subject to a consumer's use tax.[12] As stated in the Department's rules and regulations,
[i]t is presumed that any property ... sold ... in this state is sold ... for storage, use, distribution, or other consumption in this state until the contrary is established. The burden of proving that any property ... delivered in this state is delivered for a purpose other than storage, use, distribution, or other consumption in this state is on the person who purchases ... the property....[13]
Whether a resale to the Lottery occurred requires an examination of the relationship between the Lottery and Intralot.

INTRALOT'S PURCHASES ARE NOT PURCHASES FOR RESALE
Woven into the fabric of the parties' relationship are the Lottery's RFP, Intralot's proposal, and the parties' contract. The Lottery, through its RFP, sought to secure proposals from vendors to "provide an On-line Gaming System for the sale of On-line tickets for the Nebraska Lottery and its Retailers." The RFP required the on-line gaming system to include "hardware, software, Retailer terminals, communications network, and all other equipment and technology [necessary] to support On-line game operations." The vendor had to "provide the ticket stock, play slips and other terminal consumables [needed] for all On-line terminals." Intralot understood the purpose and requirements of the RFP when it submitted its proposal. Intralot acknowledged that, if selected, it would "provid[e] a state-of-the-art on-line gaming system complete with all of the required and related support services necessary to achieve the Lottery's sales and performance objectives."
The contract required Intralot to provide the Lottery with an up-and-running, on-line lottery system in exchange for 2.39 percent of the Lottery's net on-line sales. Neither the RFP, the proposal, nor the contract contains any indication that the purchases of thermal paper and play slips were not part of the on-line system Intralot contracted to provide. The RFP required that each proposal include a statement of "proposed compensation for providing all phases of the On-line ticket production, equipment, and related services." (Emphasis supplied.) In response to the RFP, Intralot confirmed it understood the Lottery's requirements for providing the equipment and services specified in the RFP. In addition, the quoted cost covered all expenses.
*187 The contract shows that the parties included ticket stock and play slips in the lottery system and as part of the agreed compensation.
Paragraph 6.19 of the contract provides as follows:
Ticket Stock: INTRALOT agrees that it will provide delivery of all ticket stock to Retailers no later than the next day after request or as per Retailer timetable. Ticket stock will be of 4.5 mil weight and all ticket stock art must have prior approval of the Lottery. The extra cost of the 4.5 mil paper above the 3.3 mil paper cost will be shared equally by both parties.

(Emphasis supplied.)
This language shows that the base cost of the 3.3-mm ticket stock was included in Intralot's compensation. Intralot's purchases of thermal paper and play slips are part of the overall cost incurred by Intralot under the contract. Because Intralot contracted to, and is compensated for, providing the Lottery with a complete on-line lottery system, Intralot's purchases of thermal paper and play slips were not purchases for resale to the Lottery.
AFFIRMED.
WRIGHT, J., not participating.
NOTES
[1] See Neb.Rev.Stat. §§ 84-901 to 84-920 (Reissue 1999 & Cum. Supp. 2006).
[2] Orchard Hill Neighborhood v. Orchard Hill Mercantile, 274 Neb. 154, 738 N.W.2d 820 (2007).
[3] Id.
[4] Utelcom, Inc. v. Egr, 264 Neb. 1004, 653 N.W.2d 846 (2002).
[5] Interstate Printing Co. v. Department of Revenue, 236 Neb. 110, 459 N.W.2d 519 (1990). See Neb.Rev.Stat. §§ 77-2701 to 77-27, 135.01 and 77-27,222 (Reissue 2003).
[6] See Interstate, supra note 5.
[7] 316 Neb. Admin. Code, ch. 1, § 002.01 (1998).
[8] § 77-2703(1); 316 Neb. Admin. Code, ch. 1, § 002.04B (1998).
[9] § 77-2704.15(1).
[10] § 77-2703(1); 316 Neb. Admin. Code, ch. 1, § 002.04B.
[11] § 77-2701.34.
[12] § 77-2703(2). See American Totalisator Co., Inc. v. Dubno, 210 Conn. 401, 555 A.2d 414 (1989).
[13] 316 Neb. Admin. Code, ch. 1, § 002.02 (1998).