Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/22/2021 08:09 AM CDT

- 838 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

Big Blue Express, Inc., appellant and
cross-appellee, v. Nebraska Department
of Revenue et al., appellees and
cross-appellants.

___ N.W.2d ___

Filed July 30, 2021.    No. S-20-518.

1. **Administrative Law: Judgments: Appeal and Error.** A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.

2. ____: ____: ____. When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Judgments: Appeal and Error.** Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court.

4. ____: ____. An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings.

5. **Taxation: Property.** Nebraska imposes a tax on each item of tangible personal property in this state at some point in the chain of commerce, unless the item is specifically excluded from taxation. If the item is purchased in Nebraska, the sales tax applies, and if the item is purchased outside Nebraska, the use tax applies. Nebraska's sales and use taxes are interrelated, and together, they provide a uniform tax upon the sale, lease, rental, use, storage, distribution, or other consumption of all tangible personal property.

- 839 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

6. **Taxation: Words and Phrases.** A "sale for resale" as that term is defined in Neb. Rev. Stat. § 77-2701.34 (Reissue 2018) is an exemption from sales and use taxes.

7. **Taxation: Proof.** The burden of establishing a tax exemption is placed on the party claiming the exemption.

8. **Taxation: Property.** When determining whether property is being leased in the normal course of a taxpayer's business within the meaning of Neb. Rev. Stat. § 77-2701.34 (Reissue 2018), a court may consider factors including, but not limited to, whether the leases are entered into with consumers who are related to or associated with the taxpayer, whether the terms of the leases and the parties' subsequent conduct reflect an arm's-length business transaction, whether the leases produced reasonable revenue for the taxpayer's business in relation to operating expenses, and whether the taxpayer held itself out to the public as being in the business of leasing the property.

9. **Appeal and Error.** An appellate court is not obligated to engage in analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Lancaster County: Kevin R. McManaman, Judge. Affirmed.

Matthew R. Ottemann, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and L. Jay Bartel for appellees.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

A Nebraska corporation purchased an interest in an airplane from a Kansas seller without paying Nebraska sales or use taxes. The Nebraska Department of Revenue (Department) assessed a tax deficiency, and the corporation claimed no taxes were owed because the purchase was a "sale for resale."[1] After a hearing, the Tax Commissioner concluded the corporation

---

[1] See Neb. Rev. Stat. §§ 77-2701.34 (Reissue 2018) and 77-2703 (Cum. Supp. 2020).

- 840 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

failed to prove the purchase was a sale for resale and affirmed the Department's deficiency assessment of $161,373.31. The corporation appealed to the Lancaster County District Court pursuant to the Administrative Procedure Act (APA),[2] and the district court affirmed. The corporation appeals, and the Department, along with the Tax Commissioner and the State, cross-appeals. We affirm.

## I. FACTS

### 1. Big Blue and Related Entities

Big Blue Express, Inc. (Big Blue), is a Nebraska corporation formed in 2004. Michael Schneider is its president, treasurer, and director. Rick Shaneyfelt is its secretary and chief financial officer. Big Blue has no employees. Big Blue and its officers have close business relationships with several other entities, and because an understanding of those relationships is helpful to our legal analysis later, we describe them in some detail when reciting the facts.

CVE Merchant Services, Inc. (CVE), owns 100 percent of Big Blue, and Schneider is the president and a 100-percent owner of CVE. CVE is also the only owner and the sole member of Cheque Point Payment Processing, LLC, which does business under the names "PowerPay" and "PowerPay Central." Schneider is also the owner and director of Tamarack Aerospace Group, Inc., and the president of CR Services, Inc. Additionally, Schneider has business relationships with The First Group, Inc., and Tactical Air Support, and he is a partner of Schay Enterprises Limited Partnership (Schay). PowerPay, Schay, The First Group, and CVE all have the same mailing address as does Big Blue.

### 2. Airplane Purchase

On April 8, 2011, Big Blue purchased a 66⅔ interest in a "2009 Embraer Phenom 100 Emb-500" airplane from a seller in Kansas. The total price of the airplane was $2,821,500,

---

[2] See Neb. Rev. Stat. § 84-917 (Reissue 2014).

- 841 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

and the parties agree that Big Blue paid no sales or use tax on the airplane in any state. Robinson's Hangar LLC purchased the remaining 33⅓ interest in the airplane. Robinson's Hangar is unrelated to either Schneider or Big Blue.

An "Aircraft Joint Ownership Agreement" and an "Aircraft Management Agreement" were entered into by Big Blue and Robinson's Hangar approximately 1 week before the purchase of the airplane. Pursuant to these agreements, Robinson's Hangar is entitled to use the airplane for 100 flight hours per year and may utilize up to 50 additional flight hours by paying Big Blue $222 per flight hour. Big Blue is entitled to use the airplane for 200 flight hours per year and may utilize up to 100 additional flight hours by paying Robinson's Hangar $111 per flight hour.

These agreements anticipated that Big Blue and Robinson's Hangar each would "lease the aircraft to their respective owners and such owner's affiliates," and the agreements authorized each party to keep the revenue from such leases. The agreements identified Big Blue as the manager of the airplane, which was hangared at an airport in Wahoo, Nebraska.

### 3. Insurance on Airplane

Big Blue purchased an aviation insurance policy on the airplane. The declarations page indicated the airplane would be used for "PLEASURE AND BUSINESS" but not "COMMERCIAL." The policy defined those terms as follows:

> **Commercial** means used principally in the business of the insured, including . . . passenger or freight carrying for hire or reward, rental to others for the purpose of pleasure and business and those uses defined under pleasure and business.
>
> . . . .
>
> **Pleasure and business** means used in the business of the insured including personal and pleasure uses but excluding any operation for hire or reward.

(Emphasis omitted.)

- 842 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

#### 4. USE AGREEMENTS

On April 30, 2011, Big Blue (as the lessor) entered into written use agreements for the airplane with lessees Schneider, CVE, Schay, and CR Services. Schneider signed all these agreements for Big Blue in his capacity as president. Schneider also signed the agreements on behalf of lessees CR Services and Schay in his capacity as president for those companies. Shaneyfelt signed as the lessee for CVE, in his capacity as its secretary. The same day, a use agreement with Cheque Point Payment Processing, doing business as PowerPay, was signed by Shaneyfelt as "CFO" of PowerPay. In that agreement, the signature for the lessor was to be Schneider as president of Big Blue, but it appears Schneider never signed.

Almost 2 years later, on July 15, 2013, Big Blue entered into a written use agreement for the airplane with Tamarack Aerospace Group. Schneider signed that agreement as the lessor in his capacity as president of Big Blue, and as the lessee in his capacity as "CEO" of Tamarack Aerospace Group. Schneider testified that on unspecified dates he, as president of Big Blue, also entered into oral use agreements with The First Group, Tactical Air Support, Steve Meyer, and Steve Buchanan.

All of the written use agreements provided for a payment of $1,300 per flight hour and made the lessees responsible for expenses such as fuel, providing a pilot and crew, and paying for insurance and hangar costs. The agreements further provided that Big Blue would send invoices for flight hours used and that unless invoices were paid within 15 days, interest would accrue at 18 percent per annum.

#### 5. INVOICES

Big Blue's records show the airplane was flown 20 times in the 20-month period between April 2011, when it was purchased, and December 2012. Flight hour invoices prepared by Big Blue at the end of each calendar year documented these flights. Specifically, invoices dated December 31, 2011, were

- 843 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

sent by Big Blue to Schneider, PowerPay, Meyer, Buchanan, and The First Group. These invoices all charged a rate of $1,100 per flight hour and related to flight dates between May 2011 and December 2011. Three flight hour invoices dated December 31, 2012, were sent to Schneider; two invoices charged $1,300 per flight hour, and one charged $1,100.

Big Blue's financial records show none of the invoices it sent in December 2011 and December 2012 were paid until after Big Blue was contacted by the Department in July 2013. Specifically, the December 31, 2011, invoices were paid between 495 and 570 days past their due dates; the December 31, 2012, invoices were paid 204 days after their due dates. Many of the invoices issued by Big Blue between December 2011 and December 2012 were paid from an investment account owned by Schneider and his wife, including the invoices issued by Big Blue to Meyer, Buchanan, PowerPay, and Schay.

On July 2, 2013, the Department contacted Big Blue about its sales tax returns and the airplane purchase. At that time, Big Blue reported that it had not collected any revenue related to leasing the airplane. As noted, however, Big Blue subsequently collected payment on the various invoices issued in 2011 and 2012. Big Blue did not charge interest on any late invoice payments.

Between July and December 2013, Big Blue issued five flight hour invoices to Tamarack Aerospace Group that were promptly paid, four flight hour invoices to Schneider that were promptly paid, and flight hour invoices to PowerPay and Schay that were promptly paid. All of these invoices appear to relate to flight dates in 2013 and charge $1,300 per flight hour.

In total, Big Blue issued 20 flight hour invoices between December 31, 2011, and December 31, 2013, showing the airplane was leased for a total of 237.69 flight hours. Six of the invoices billed $1,100 per flight hour, and the remaining 14 billed $1,300 per flight hour. Of the 237.69 flight hours, 133.9, or 56 percent, were invoiced directly to Schneider.

- 844 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

Schneider testified that Big Blue issued invoices after details from the airplane's flight logbook were sent to him. Although he testified that he was involved in the preparation of the invoices, he also testified that he did not recognize any of the flight hour invoices offered at trial as being prepared by him. Schneider suggested that a person named "Brenda," surname unknown to him, or perhaps Pam Schendt, had created them. He did not know which of his many related entities employed either Brenda or Schendt. Shaneyfelt testified that he supervised Big Blue's invoicing, which was performed by Schendt, and that he generally was guided by Schneider in doing so. Neither Schneider nor Shaneyfelt could explain the years-long delay in preparing some of the invoices.

## 6. Flight Hour Rate
### and Advertising

Schneider is a pilot with certifications to fly multiple aircraft, and he testified that he established the $1,300 flight hour rate contained in the use agreements. He also testified he thought the rate reflected fair market value in 2011 through 2013. Schneider explained that when setting the $1,300 flight hour rate, he reviewed industry publications that analyze the hourly cost involved in owning an aircraft and then added a rate of profit to that hourly cost. He also relied on his experience as a pilot and his previous experience in leasing airplanes.

Big Blue also offered the testimony of Vincent Barone. Barone testified he graduated from high school in 2016 and was pursuing a bachelor's degree in aviation while he worked as a commercial pilot for a company specializing in aircraft consulting and management. Barone generally testified that he reviewed industry publications and industry standards and thought the cost to operate the airplane was somewhere between $1,100 and $1,250 per flight hour, so the rate of $1,300 per flight hour for the airplane was "about fair market value" in 2011 through 2013. Barone testified on cross-examination that Big Blue would have to lease the airplane

- 845 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

at least 200 flight hours per year to break even with a flight hour rate of $1,300.

Schneider testified that he was busy with other endeavors and thus made no attempt to market or advertise the airplane as available for lease; he merely talked to individuals he "knew who needed aircraft." When asked by the Department who he had talked to in this regard, Schneider could recall only one person.

### 7. BIG BLUE'S FINANCES

Rental revenue from the airplane is Big Blue's sole source of ordinary income. At $1,300 per flight hour, the 237.69 flight hours during the 32-month period from May 2011 to December 2013 generated an average monthly revenue of approximately $9,600 for Big Blue. Big Blue's financial records show that during the same period, its operating expenses were approximately $20,000 per month. The records also show that in 2011, Big Blue received paid in capital of $277,000 and $166,000 from CVE. In 2012, Big Blue received paid in capital of $304,296 from CVE. And in 2013, Big Blue received paid in capital from CVE of $154,000.

Big Blue's profit-and-loss statements show it had net income of approximately $95,000 in 2011 and net losses in 2012 and 2013 of approximately $186,000 and $2,614, respectively.

### 8. DEPARTMENT ASSESSMENT AND TAX COMMISSIONER ORDER

On April 28, 2014, the Department issued a notice of deficiency determination to Big Blue for the period of April 1 through 30, 2011, in the total amount of $161,373.31. This included a use tax in the amount of $131,670, a penalty of $13,167, and interest calculated through June 27, 2014, in the amount of $16,536.31. The deficiency was calculated using a tax rate of 7 percent on two-thirds of the total purchase price of the airplane.

Big Blue timely protested the notice and assessment, and the parties attempted to resolve the issue on their own. When

- 846 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

they were unsuccessful, an administrative hearing was held before the Tax Commissioner in December 2018.

At that hearing, Big Blue generally claimed the airplane purchase was not subject to Nebraska sales and use taxes under § 77-2703(2) because it was a sale for resale,[3] purchased for the purpose of leasing to others and leased at fair market value. Big Blue also argued that if the Tax Commissioner found the airplane purchase was not a sale for resale, then Big Blue should get a credit for sales tax paid by the lessees on some of the airplane leases pursuant to Neb. Rev. Stat. §§ 77-2709 and 77-2704.28 (Reissue 2018). The Department argued that Big Blue's purchase and use of the airplane did not qualify as a sale for resale, and it further argued that Big Blue's lease of the airplane to its sister company subjected it to sales and use taxes under § 77-2704.28. The Department generally denied that Big Blue was entitled to any credit or setoff for sales tax paid by lessees.

After the hearing, the Tax Commissioner found Big Blue was liable for use tax under both § 77-2704.28 and § 77-2703(2) and affirmed the Department's deficiency assessment. The Tax Commissioner denied Big Blue any credit or setoff for sales tax paid by any lessee.

## 9. District Court Order

Big Blue appealed to the Lancaster County District Court pursuant to the APA. In an order entered July 1, 2020, the district court affirmed the Tax Commissioner's order. The court disagreed with the Tax Commissioner as to the applicability of § 77-2704.28 and found that statute did not subject Big Blue's airplane purchase to Nebraska sales or use tax. But it agreed Big Blue failed to prove the purchase and use of the airplane was a "sale for resale," and thus, it affirmed the tax deficiency assessment under § 77-2703(2).

The district court focused on the requirement that a sale for resale must be a sale in the normal course of the taxpayer's

---

[3] See § 77-2701.34 (defining sale for resale).

- 847 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

business,[4] and it particularly emphasized the statutory definition of "business" as an "activity engaged in . . . with the object of gain, benefit, or advantage, either direct or indirect."[5] Relying in part on case law from Michigan and Ohio[6] that interpreted similar statutory language in similar circumstances, the district court reasoned Big Blue had not shown the airplane was purchased to be resold in the normal course of its business because the evidence showed Big Blue made little or no attempt to use the airplane for the object of its gain, benefit, or advantage.

In this respect, the district court found that although Barone testified Big Blue needed to lease the airplane 200 hours per year to break even, it came nowhere close to doing so. Instead, the undisputed evidence was that Big Blue had leased the airplane for a total of 237.69 hours from May 2011 to December 2013, well below the annual threshold necessary to recoup the costs associated with owning the airplane and turning a profit. The district court characterized Big Blue's billing and collection practices with respect to the airplane leases as "disinterested," noting it often waited a substantial amount of time to send and collect on invoices and it never collected interest on late payments, even though it had the contractual authority to do so. The court also emphasized that Big Blue received substantial cash infusions from its parent company CVE, despite the fact that CVE never used the airplane. It reasoned that these factors suggested Big Blue's purpose in buying the airplane was not to engage in business, because business involved operation for a gain or benefit.

The district court recognized that a business need not be profitable, but reasoned that § 77-2701.07 required an entity purporting to be engaged in a business to "at least try." Noting

---

[4] See § 77-2701.34.

[5] See Neb. Rev. Stat. § 77-2701.07 (Reissue 2018).

[6] See, *Pi In The Sky, L.L.C. v. Testa*, 2018 Ohio 4812, 56 Ohio St. 3d 113, 119 N.E.3d 417 (2018); *Devonair Enter. v. Dep't of Treasury*, 297 Mich. App. 90, 823 N.W.2d 328 (2012).

- 848 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

that Big Blue admittedly made no effort to market the airplane beyond Schneider's "word-of-mouth advertising," the court reasoned "[t]he fact that Big Blue's marketing was dictated by Schneider's other business pursuits also suggests that Big Blue bought the airplane not to realize some benefit for itself, but rather to accommodate Schneider." It concluded:

> In sum, the Court finds that Big Blue did not purchase the airplane with the object of gain, benefit, or advantage under § 77-2701.07. Nor, under § 77-2701.34, was renting the airplane to others at market rates the "sole purpose" of buying it. The predominant purpose appears to have been to convenience Schneider (who personally accounted for more than half the flight hours) and his other business pursuits.

The district court further rejected Big Blue's argument that it was entitled to a credit for certain sales tax paid on the leases under the doctrine of equitable recoupment. In doing so, it noted that the Tax Commissioner had rejected Big Blue's similar argument based on § 77-2709, and Big Blue had not appealed on that issue. The district court questioned whether it could address the new equitable recoupment argument, noting the general rule that a court reviewing an agency decision under the APA cannot consider an issue not presented to the agency.[7] It also questioned whether the argument for equitable recoupment could ever be valid, as it was unclear whether the Department was authorized to issue equitable credit. The court ultimately concluded that Big Blue's equitable recoupment argument was meritless in any event, because it would not be Big Blue that was entitled to seek a credit for sales taxes paid, but, rather, the lessees who actually paid those taxes.[8]

Big Blue filed this timely appeal, and the Department cross-appealed. We moved the appeals to our docket on our own motion.

---

[7] See § 84-917(5).

[8] See, generally, Neb. Rev. Stat. § 77-2703 (Reissue 2018).

- 849 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

## II. ASSIGNMENTS OF ERROR

Big Blue assigns, restated and summarized, that the district court erred in concluding Big Blue did not prove its purchase and subsequent use of the airplane was a nontaxable sale for resale. Alternatively, Big Blue argues that if there was no sale for resale, then it is entitled to a credit for Nebraska sales tax paid by certain lessees of the airplane under the doctrine of equitable recoupment.

On cross-appeal, the Department assigns the district court erred in failing to find that Big Blue was required to pay use tax on the purchase of the airplane under § 77-2704.28, because Big Blue leased the airplane to a related entity and that entity did not qualify for any sales and use tax exemptions on the leased property.

## III. STANDARD OF REVIEW

[1,2] A judgment or final order rendered by a district court in a judicial review pursuant to the APA may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[9] When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[10]

[3] Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court.[11]

[4] An appellate court, in reviewing a district court judgment for errors appearing on the record, will not substitute its factual findings for those of the district court where competent evidence supports those findings.[12]

---

[9] *Prokop v. Lower Loup NRD*, 302 Neb. 10, 921 N.W.2d 375 (2019).

[10] *Id.*

[11] *Id.*

[12] *Id.*

- 850 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

## IV. ANALYSIS

### 1. RELEVANT STATUTES

[5] Generally speaking, and as discussed in greater detail below, Nebraska imposes a tax on each item of tangible personal property in this state at some point in the chain of commerce, unless the item is specifically excluded from taxation.[13] If the item is purchased in Nebraska, the sales tax applies.[14] If the item is purchased outside Nebraska, the use tax applies.[15] Nebraska's sales and use taxes are thus interrelated, and together, they provide a uniform tax upon the sale, lease, rental, use, storage, distribution, or other consumption of all tangible personal property.[16]

#### (a) Sales Tax

Sales and use taxes are both imposed by § 77-2703. Section 77-2703(1) imposes a sales tax "upon the gross receipts from all sales of tangible personal property sold at retail in this state." "Gross receipts" is defined as the "total amount of the sale or lease or rental price, as the case may be, of the retail sales of retailers."[17] "[S]ale at retail" is defined as "any sale, lease, or rental for any purpose other than for resale, sublease, or subrent."[18]

"Sale for resale" is defined as a "sale of property . . . to any purchaser who is purchasing such property . . . for the purpose of reselling it in the normal course of his or her business."[19] It includes a "sale of property to a purchaser for the sole

---

[13] See *Intralot, Inc. v. Nebraska Dept. of Rev.*, 276 Neb. 708, 757 N.W.2d 182 (2008). See, also, Neb. Rev. Stat. § 77-2701 et seq. (Reissue 2018 & Cum. Supp. 2020).

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] § 77-2701.16.

[18] § 77-2701.31.

[19] § 77-2701.34.

- 851 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

purpose of that purchaser renting or leasing such property to another person, with rent or lease payments set at a fair market value."[20] "Lease or rental" is defined as "any transfer of possession or control of tangible personal property for a fixed or indeterminate term for consideration."[21] And "[b]usiness" is defined as "any activity engaged in by any person or caused to be engaged in by him or her with the object of gain, benefit, or advantage, either direct or indirect."[22]

### (b) Use Tax

Section 77-2703(2) imposes a use tax on the "storage, use, or other consumption in this state of property purchased . . . from any retailer and on any transaction the gross receipts of which are subject to tax under subsection (1)." "Retailer" is defined as "any seller,"[23] and "[s]eller" includes "every person engaged in the business of selling, leasing, or renting property of a kind the gross receipts from the retail sale, lease, or rental of which are required to be included in the measure of the sales tax."[24] Essentially, § 77-2703(2) provides that use tax is owed if the purchase, had it occurred in Nebraska, would have been subject to sales tax under § 77-2703(1).[25]

### (c) Exemptions

The sales and use tax statutes also contain a number of statutory exemptions, codified primarily at §§ 77-2704.02 to 77-2704.30. One such exemption is § 77-2704.28, which relates to leases between related companies, and provides:

> A lease of property from a subsidiary to the parent company, from a parent company to a subsidiary, from

---

[20] *Id*.

[21] § 77-2701.18.

[22] § 77-2701.07.

[23] § 77-2701.32(1).

[24] § 77-2701.36.

[25] See *Lackawanna Leather Co. v. Nebraska Dept. of Rev.*, 259 Neb. 100, 608 N.W.2d 177 (2000).

- 852 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

one subsidiary to another subsidiary of the same parent company, or between brother-sister companies shall not be subject to the sales and use tax imposed by the Nebraska Revenue Act of 1967 if such property was either originally acquired prior to June 1, 1967, or if acquired thereafter, the seller or transferor directly or indirectly has previously paid a sales or use tax thereon. Such lessor company shall have the same sales and use tax liability on the purchase of property to be leased to the lessee company as the lessee company would have paid if the lessee company had purchased the property directly.

[6] We have also described a "sale for resale," as that term is defined in § 77-2701.34, as an exemption from sales and use taxes.[26] Big Blue's primary argument on appeal is that its purchase and use of the airplane meets the definition of a sale for resale, and thus was nontaxable.

We note the parties' briefing debates whether the sale for resale provisions in the Nebraska Revenue Act of 1967 are properly characterized as an exception in a statute imposing a tax or as an exemption from taxation. Generally speaking, statutes imposing a tax are strictly construed against the government and in favor of the taxpayer,[27] while exemptions from taxation are to be strictly construed in favor of the government and not extended by judicial construction.[28] Arguably, there is some tension in our case law as to whether a sale for resale is properly considered an exception or an

---

[26] See, generally, *Intralot, supra* note 13; *May Broadcasting Co. v. Boehm*, 241 Neb. 660, 490 N.W.2d 203 (1992); *Interstate Printing Co. v. Department of Revenue*, 236 Neb. 110, 459 N.W.2d 519 (1990); *Nucor Steel v. Leuenberger*, 233 Neb. 863, 448 N.W.2d 909 (1989).

[27] See *New York Ins. Co. v. Edwards*, 271 U.S. 109, 46 S. Ct. 436, 70 L. Ed. 859 (1926). See, generally, 71 Am. Jur. 2d *State and Local Taxation* § 7 (2012).

[28] See, *Ash Grove Cement Co. v. Nebraska Dept. of Rev.*, 306 Neb. 947, 947 N.W.2d 731 (2020); *Woodmen of the World v. Nebraska Dept. of Rev.*, 299 Neb. 43, 907 N.W.2d 1 (2018).

- 853 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

exemption,[29] but we see no need to resolve that tension in this case.

[7] Under Nebraska law, it is presumed that the airplane purchase was subject to use tax, and Big Blue had the burden of proving to the contrary.[30] As such, it was Big Blue's burden to prove that its purchase and use of the airplane was a non-taxable sale for resale.[31] And as we explain next, regardless of whether the relevant statutes are construed broadly or strictly, Big Blue failed to meet its burden on this key issue.

## 2. Not Sale for Resale

Big Blue argues that to prove the purchase and use of the airplane was a sale for resale, it was required to prove (1) it purchased the airplane to lease it; (2) it leased the airplane to another; (3) the lease payments were set at fair market value; and (4) the leasing was done in the normal course of its business.[32] The Department does not vigorously contest this framework, but argues that Big Blue failed to prove the lease payments were set at fair market value and further failed to show the leasing was done in the normal course of Big Blue's business.

## (a) Cases From Other Jurisdictions

The parties direct us to no Nebraska case in which we have addressed a sale for resale involving leased property. But at

---

[29] Compare *Intralot, supra* note 13 (referring to sale for resale as both exemption from taxation and as not subject to sales and use taxes); *May Broadcasting Co., supra* note 26 (referring to sale for resale as exemption); *Interstate Printing Co., supra* note 26 (same); *Nucor Steel, supra* note 26 (same).

[30] See § 77-2703(2)(e) ("it shall be presumed that property sold, leased, or rented by any person for delivery in this state is sold, leased, or rented for storage, use, or consumption in this state until the contrary is established. The burden of proving the contrary is upon the person who purchases, leases, or rents the property").

[31] See *Intralot, supra* note 13 (burden of establishing that purchase was sale for resale is on party claiming exemption).

[32] See § 77-2701.34.

- 854 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

least two other jurisdictions have applied similar statutory language to facts which are much the same as those presented here.

In *Devonair Enter., L.L.C. v. Dep't of Treasury*,[33] a Michigan taxpayer appealed from an order of the tax tribunal affirming the assessment of a use tax on its purchase of an airplane. The relevant statutes and regulations provided that a "person engaged in the business of renting or leasing tangible personal property to others"[34] could either pay tax at the time the property was purchased or pay tax on rental receipts. "Business" was defined as "activities engaged in by a person or caused to be engaged in by a person with the object of gain, benefit, or advantage, either direct or indirect."[35]

The evidence showed the taxpayer, a corporation, purchased the airplane in 2007 for approximately $3.6 million and entered into two lease agreements the same day. One was with the sole member of the taxpayer corporation, and the other was also with a related entity. The lease agreements were for $200 per flight hour and $680 per flight hour, respectively. In 2007, the airplane had 74.4 flight hours; in 2008, it had 179 flight hours; and in 2009, it had 136.5 flight hours. An aviation expert testified that a charter service would generally charge about $1,300 per flight hour for a similar airplane and that 479 flight hours per year is a typical usage. The expert further testified that the costs of owning the airplane were about $1,580 per flight hour. Evidence showed the taxpayer did not advertise itself as a lessor with the public and pursued no lease agreements with unrelated entities.

The tax tribunal and the district court in *Devonair Enter.* both found the evidence was insufficient to show the taxpayer corporation was engaged in the business of leasing the airplane to others. In doing so, they generally reasoned: (1) The

---

[33] *Devonair Enter., supra* note 6.

[34] Mich. Admin. Code § 205.132 (1979).

[35] Mich. Comp. Laws § 205.92(h) (2021).

- 855 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

hourly rate charged was not sufficient to cover the costs of leasing the airplane; (2) the taxpayer did not advertise itself to the public as a lessor and pursued no leasing agreements with unrelated companies; and (3) the taxpayer's very limited rental receipts resulted in it paying minimal use tax, compared to the substantial sales tax that would have been paid at the time of purchase. The tax tribunal and the district court found this evidence showed the taxpayer was not engaged in business because it had no reasonable expectation of gain, benefit, or advantage to itself.

A similar situation was addressed by the Ohio Supreme Court in *Pi In The Sky, L.L.C. v. Testa*.[36] There, a single-member, limited liability company purchased an airplane without paying sales or use tax on it and then leased it to its sole corporate member. The applicable law provided that a "'[r]etail sale'" did not occur and thus no sales and use taxes were owed when "the purpose of the consumer is to resell the thing transferred . . . by a person engaging in business, in the form in which the same is, or is to be, received by the person."[37] "'Business'" was defined as engagement in an activity "with the object of gain, benefit, or advantage, either direct or indirect."[38]

The Ohio Supreme Court focused its analysis on whether the taxpayer's use of the airplane constituted "engaging in business" so that it could meet the sale for resale exception. In doing so, it found the taxpayer leased the airplane exclusively to its only member for $80 per flight hour. It also found the taxpayer had no business location aside from the residence of its sole member, that the airplane was never used by a third-party lessee, and that there was no evidence the taxpayer ever marketed the airplane for lease. Based on this evidence, it found significant support for the tax tribunal's conclusion that the airplane was not purchased for the purpose of leasing it to others as part of a business enterprise.

---

[36] *Pi In The Sky, L.L.C., supra* note 6.

[37] See Ohio Rev. Code Annot. § 5739.01(E) (West 2020).

[38] See § 5739.01(F).

- 856 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
309 NEBRASKA REPORTS
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

We agree with the Department that the statutory language analyzed by the courts in *Devonair Enter.* and *Pi In The Sky, L.L.C.*, is similar to the relevant language of our statutes governing leases in the normal course of business. Because of this similarity, we find those cases instructive and we consider the factors discussed by those courts to be appropriate when analyzing whether Big Blue has shown the airplane was leased in the normal course of its business.

[8] As such, when determining whether property is being leased in the normal course of a taxpayer's business within the meaning of § 77-2701.34, a court may consider factors including, but not limited to, whether the leases are entered into with consumers who are related to or associated with the taxpayer, whether the terms of the leases and the parties' subsequent conduct reflect an arm's-length business transaction, whether the leases produced reasonable revenue for the taxpayer's business in relation to operating expenses, and whether the taxpayer held itself out to the public as being in the business of leasing the property.[39] Applying those factors here, we agree that Big Blue has not met its burden of proving that the purchase and use of the airplane was a sale for resale.

### (b) No Business Activity With Object
### of Gain, Benefit, or Advantage

Pursuant to § 77-2701.07, Big Blue had to show it purchased the airplane to lease it in the normal course of its business. "Business" in this respect is an "activity engaged in by any person or caused to be engaged in by him or her with the object of gain, benefit, or advantage, either direct or indirect."[40]

We find substantial support in the record for the district court's factual findings and conclusion that Big Blue's purchase and leasing of the airplane was not pursued with the "object of [its] gain, benefit, or advantage."[41] In this respect,

---

[39] See, *Pi In The Sky, L.L.C., supra* note 6; *Devonair Enter., supra* note 6.

[40] § 77-2701.07.

[41] See *id.*

- 857 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

the vast majority of the leases entered into by Big Blue were either with Schneider personally or with related entities. Although several leases were with nonrelated entities, including those with Meyer and Buchanan, the record shows that Schneider personally paid invoices related to those leases. And over half of the airplane's flight hours were invoiced directly to Schneider.

The terms of the leases and the parties' subsequent conduct with respect to invoices also demonstrate that Big Blue was not engaged in business activity with the object of Big Blue's gain, benefit, or advantage. Approximately 20 percent of the leases were for an hourly rate under what Big Blue considered to be fair market value. The use agreements required the lessees to pay for pilot services, and while the flight logs show Schneider was often the pilot, he testified that no lessee had ever paid him for his pilot services. Big Blue issued invoices for flight hours for the years 2011 and 2012, but those invoices remained outstanding and Big Blue made no effort to collect on them prior to the time it was contacted by the Department about the airplane in July 2013. This delay resulted in some of the invoices being paid as late as 500 days after issuance, and even then, Big Blue charged no interest, despite the terms of the lease agreement. After being contacted by the Department, Big Blue generally increased its leasing of the airplane and began promptly collecting on invoices.

While not dispositive on its own, it is plainly evident from the record that the revenue Big Blue generated from leasing the airplane was substantially less than the costs it incurred in owning the airplane. It is undisputed that Big Blue's only source of ordinary income was revenue from leasing the airplane. It only leased the airplane for a total of 237.69 hours from May 2011 to December 2013, and as such, it generated an average of approximately $9,000 in revenue each month, while its operating expenses averaged approximately $20,000 per month. Big Blue argues its profit-and-loss statements show a small net profit in 2012 and 2013, but the evidence is that this

- 858 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

was largely the result of substantial capital infusions made by CVE to Big Blue, even though CVE never leased the airplane. Indeed, the record suggests the cash infusions were needed to keep Big Blue afloat precisely because it was not leasing the airplane for its gain, benefit, or advantage.

And, finally, the record shows Big Blue made almost no effort to hold itself out to consumers or the public as the lessor of the airplane, the very business activity in which it claims to have been engaged. Schneider admitted that other than talking to one person, he made no effort to market the airplane to potential lessees other than those with whom he was affiliated or personally acquainted. And it is telling that when insuring the airplane, Big Blue purchased coverage for "PLEASURE AND BUSINESS" use, which expressly excluded "any operation for hire or reward."

On this record, there is substantial, competent evidence to support the district court's conclusion that Big Blue failed to meet its burden of showing that it purchased the airplane to lease it in the normal course of engaging in an activity designed to result in "gain, benefit, or advantage" to Big Blue. We therefore agree that the airplane purchase was not a nontaxable sale for resale, and we affirm the district court's finding that the Department's tax deficiency assessment of $161,373.31 was proper.

### 3. § 77-2704.28 and Leases
#### With Sister Company

As noted, the Tax Commissioner affirmed the Department's deficiency assessment on two bases. It found the assessment was proper because the airplane purchase was not a sale for resale, and it also found the assessment was proper, pursuant to § 77-2704.28, because Big Blue leased the airplane to its sister company, PowerPay, on at least one occasion. The district court disagreed that § 77-2704.28 applied, but agreed that use tax was owed because Big Blue had not proved the sale for resale exemption applied. In its cross-appeal, the

- 859 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

Department contends the district court erred in its analysis of § 77-2704.28.

[9] We do not reach the merits of the cross-appeal; having determined the airplane purchase was not a nontaxable sale for resale and having affirmed the tax deficiency assessment of $161,373.31 on that basis, it is unnecessary to address whether an alternative statutory basis also exists for affirming the deficiency. An appellate court is not obligated to engage in analysis that is not necessary to adjudicate the case and controversy before it.[42] Nevertheless, so that the Legislature is generally apprised of the perceived tension in the statutory language, we expound on the competing constructions of § 77-2704.28 advanced by the parties in this case.

Section 77-2704.28 is codified in that portion of Nebraska's sales and use tax statutes that set out specific exemptions to the sales and use taxes imposed by § 77-2703.[43] Section 77-2704.28 is entitled "Leases between related companies; exemption," and it provides:

A lease of property from a subsidiary to the parent company, from a parent company to a subsidiary, from one subsidiary to another subsidiary of the same parent company, or between brother-sister companies shall not be subject to the sales and use tax imposed by the Nebraska Revenue Act of 1967 if . . . the seller or transferor directly or indirectly has previously paid a sales or use tax thereon. Such lessor company shall have the same sales and use tax liability on the purchase of property to be leased to the lessee company as the lessee company would have paid if the lessee company had purchased the property directly.

Generally stated, the Department contends the first sentence of § 77-2704.28 exempts a lessee company from paying

---

[42] See, *George Clift Enters. v. Oshkosh Feedyard Corp.*, 306 Neb. 775, 947 N.W.2d 510 (2020); *Woodmen of the World, supra* note 28.

[43] See §§ 77-2704.02 to 77-2704.30.

- 860 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

sales tax when it leases property from a related company and the lessor company has previously paid sales or use tax on the property. And the Department contends the second sentence of § 77-2704.28 imposes sales or use tax on a lessor company when that company purchases property to be leased and subsequently leases that property to a sufficiently related company. According to the Department, when such a lease occurs, the lessor company's sales and use tax liability on the purchase is calculated based on the sales and use tax liability the related lessee company would have incurred if it had purchased the property directly. Moreover, the Department contends the second sentence of § 77-2704.28 imposes this tax on the lessor even if the purchase would otherwise qualify as a sale for resale. In other words, the Department interprets the first sentence of § 77-2704.28 to exempt certain lessees from sales tax when the lease is between related companies and interprets the second sentence of § 77-2704.28 to impose use tax on certain lessors when the lease is between related companies.

Big Blue characterizes the Department's interpretation of the second sentence of § 77-2704.28 as "nonsensical."[44] It argues the Department's interpretation exposes a lessor to a use tax if its purchase of property to be leased otherwise qualified as a sale for resale, but it leases the property to a sufficiently related entity just one time, perhaps even years after the original purchase. Big Blue contends such a construction is improper, particularly when § 77-2704.28 is codified as an exemption and does not purport to impose a new tax.

Big Blue suggests a completely different interpretation of § 77-2704.28, under which the first sentence of § 77-2704.28 gives a lessor wanting to lease property to a related company two options. First, it can choose, at the time of the lease, to pay sales and use taxes on the purchase of the property; if it does, then the lessee is exempt from paying sales tax on the lease. Second, it can choose, again at the time of the lease, to

---

[44] Brief for cross-appellees on cross-appeal at 1.

- 861 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

not pay sales and use taxes on the purchase of the property, but instead to have the lessee pay sales tax on the lease. Big Blue does not explain how this construction of § 77-2704.28 can be reconciled with the "previously paid" language of the first sentence. As to the second sentence of the statute, Big Blue contends "[s]uch lessor" necessarily refers to a company which has elected the first option, and describes how that lessor's sales and use taxes are to be assessed.

In its order, the district court recognized that neither party's interpretation of § 77-2704.28 was "without its complications," in that neither construction perfectly accounts for or reconciles all of the statutory language. We agree the statutory language is vexing, and we are not persuaded that either party's proposed interpretation is consistent with settled principles of statutory construction.

The correct interpretation and application of § 77-2704.28 will need to wait for a case where it is dispositive. In the meantime, we leave to the Legislature consideration of whether its intended policy is adequately set forth in the statutory language of § 77-2704.28.

### 4. Equitable Recoupment

Big Blue makes another argument related to § 77-2704.28. It argues that because some of the airplane lessees—specifically CVE, PowerPay, and CR Services—are its subsidiaries or brother-sister companies, then under its interpretation of the first sentence of § 77-2704.28, those entities did not have to pay sales tax on the leases if Big Blue had to pay tax on the airplane purchase.[45] Big Blue contends the tax amount it owes on the deficiency assessment should thus be offset by the sales tax payments made by these three related entities under the doctrine of equitable recoupment.

---

[45] See 316 Neb. Admin Code, ch. 1, § 018.08A (2017) (recognizing exemption in § 77-2704.28 applies to corporations that have at least 50 percent common ownership and other entities that would be considered parent, subsidiary, or brother-sister if they were corporations).

- 862 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

As it has been described by another court:

> The ancient doctrine of equitable recoupment, which developed concurrently at common law and in equity, was judicially created to preclude unjust enrichment of a party to a lawsuit and to avoid wasteful multiplicity of litigation. . . . The doctrine has been applied in Federal tax matters since the Supreme Court's decision in *Bull v. United States*, 295 U.S. 247 (1935), to allow the bar of the expired statutory limitation period to be overcome in limited circumstances in order to prevent inequitable windfalls to either taxpayers or the Government that would otherwise result from inconsistent tax treatment of a single transaction, item, or event affecting the same taxpayer or a sufficiently related taxpayer. . . . The doctrine of equitable recoupment may be applied to relieve inequities caused when a transaction is treated inconsistently under different taxes, such as the income tax and the estate tax. . . . However, the party asserting equitable recoupment may not affirmatively collect the time-barred underpayment or overpayment of tax. Equitable recoupment "operates only to reduce a taxpayer's timely claim for a refund or to reduce the government's timely claim of deficiency."[46]

As a general matter, to establish equitable recoupment, a party must prove:

> (1) The overpayment or deficiency for which recoupment is sought by way of offset is barred by an expired period of limitation; (2) the time-barred overpayment or deficiency arose out of the same transaction, item, or taxable event as the overpayment or deficiency before the Court; (3) the transaction, item, or taxable event has been inconsistently subjected to two taxes; and (4) if the transaction, item, or taxable event involves two or more taxpayers,

---

[46] *Estate of Mueller v. C.I.R.*, 101 T.C. 551, 551 (1993), *disapproved on other grounds* 153 F.3d 302 (6th Cir. 1998), *superseded by statute, Estate of Jorgensen v. C.I.R.*, 97 T.C.M. (CCH) 1328 (2009).

- 863 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

there is sufficient identity of interest between the taxpayers subject to the two taxes that the taxpayers should be treated as one.[47]

Some states have declined to adopt the doctrine of equitable recoupment, reasoning their statutory tax scheme is the sole means of recovering any overpayment.[48] Similarly, Nebraska has a statute, § 77-2709, that specifically addresses how credits against tax deficiencies are to be determined.

Section 77-2709(1) provides in pertinent part that in making a deficiency determination for sales and use taxes, the "Tax Commissioner may offset overpayments for a period or periods, together with interest on the overpayments, against underpayments for other period or periods, against penalties, and against the interest on the underpayments."

Here, Big Blue argued to the Tax Commissioner that it was entitled to credit under § 77-2709. In doing so, it made substantially the same argument it now attempts to make under the theory of equitable recoupment. Specifically, Big Blue argued to the Tax Commissioner that it should be given a setoff or credit under § 77-2709 because, under § 77-2704.28, if it has to pay use tax on the airplane purchase, then its related lessees—CVE, PowerPay, and CR Services—should have been exempt from paying sales tax on their airplane leases. Big Blue makes this argument despite the fact that our record shows that CVE and CR Services never used the airplane after entering into the lease agreement. Regardless of the evidentiary weakness in Big Blue's claim, the Tax Commissioner denied credit under § 77-2709 because it expressly rejected Big Blue's interpretation of § 77-2704.28. Instead, the Tax Commissioner found that § 77-2704.28 exempted the related company lessees

[47] *Menard, Inc. v. C.I.R.*, 130 T.C. 54, 62-63 (2008).

[48] See, *Gen. Motors Corp. v. Limbach*, 67 Ohio St. 3d 90, 616 N.E.2d 204 (1993); *Anderson v. Dept. of Rev.*, 313 Or. 1, 828 P.2d 1001 (1992) (reasoning tax statute waives sovereign immunity and thus sovereign immunity still applies to equitable claims); *Dairyland Harvestore v. Wisconsin Dept. of Revenue*, 151 Wis. 2d 799, 447 N.W.2d 56 (Wis. App. 1989).

- 864 -

Nebraska Supreme Court Advance Sheets
309 Nebraska Reports
BIG BLUE EXPRESS v. NEBRASKA DEPT. OF REV.
Cite as 309 Neb. 838

from paying sales tax on the leases only if Big Blue had "previously paid" tax on the airplane purchase, which it had not done at the time the lessees paid the sales tax.

In its APA proceeding before the district court, Big Blue did not challenge the Tax Commissioner's refusal to issue a credit under § 77-2709 or its related interpretation of § 77-2704.28. Instead, before the district court, and now before this court, Big Blue relies on an interpretation of § 77-2704.28 that was rejected by the Tax Commissioner, as support for its argument that it is entitled to credit based on the theory of equitable recoupment. Because the Tax Commissioner explicitly rejected the legal argument Big Blue now attempts to assert via an equitable doctrine, and because Big Blue did not appeal that issue to the district court, we find the argument has not been preserved for appellate review,[49] and we decline to address it.

## V. CONCLUSION

The district court's finding that Big Blue's purchase of the airplane did not qualify as a nontaxable sale for resale is supported by sufficient competent evidence and is not contrary to law, and we affirm the deficiency assessment under § 77-2703. We do not reach the merits of Big Blue's assignment of error related to equitable recoupment because it has not been preserved for appellate review. And we decline to reach the Department's cross-appeal, as it is not necessary to resolve the appeal. The judgment of the district court is therefore affirmed.

Affirmed.

Miller-Lerman, J., participating on briefs.

---

[49] See *Orchard Hill Neighborhood v. Orchard Hill Mercantile*, 274 Neb. 154, 738 N.W.2d 820 (2007) (in APA appeal, district court cannot commit error in resolving issue never presented to it).